BANK OF NAPERVILLE, Plaintiff-Counterdefendant-Appellant and Cross-Appellee, *v.* KENNETH H. HOLZ, Defendant-Appellee.—(PAUL G. BUBALA *et al.*, Defendants-Counterplaintiffs-Appellees and Cross-Appellants.)

Second District   No. 79-486

Opinion filed July 14, 1980.

534

Harris Fawell, of Fawell, James & Brooks, of Naperville, for appellant.

Anthony F. Mannina, of Marco & Mannina, of Downers Grove, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Bank of Naperville (the Bank), appeals from a judgment of the Circuit Court of Du Page County entered in favor of defendants, Paul and Carol Bubala. The Bubalas cross appeal from the dismissal of their counterclaim and from the denial of their petition for fees and costs pursuant to section 41 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 41).

Defendant, Kenneth Holz, was the operator of an automobile dealership, Aurora Imports, Inc. The Bank made a capital loan to Holz and also financed Aurora Import's auto floor plan. In September of 1973, the Bank made a floor plan check to account for the cars it had financed and discovered that several cars had been sold "out of trust" creating an unauthorized debt. The total debt owed to the Bank was approximately $30,000.

Wallace Zouk, a Bank vice-president, met with Holz in an attempt to have this debt repaid. Holz outlined to the Bank a plan to sell Aurora Imports and form a new corporation, Lincolnway Imports, Inc. Dr. Paul Bubala would be the principal owner of the new corporation. After a check of Dr. Bubala's credit, the Bank consented to the sale. Dr. Bubala never met with Bank officials. Instead, the Bank gave Holz various form documents to be signed by Dr. Bubala and his wife. The documents included: a floor plan agreement for Lincolnway, a corporate resolution appointing the Bank as Lincolnway's depository, a U.C.C. financing statement, and four "unlimited guarantees" (two to be signed by Holz and his wife guaranteeing the extension of credit to Bubala and Lincolnway, and two to be signed by Dr. Bubala and his wife guaranteeing the extension of credit to Holz and Lincolnway). While all of the documents were signed and returned to the Bank by Holz, none were dated, and some contained blank spaces where terms were meant to be filled in.

Much of the testimony at trial concerned the parties' intent in executing these documents. Zouk testified that the guarantees signed by the Bubalas were intended to include the $30,000 still owed by Holz to the Bank. Holz testified that he used his house to secure this old debt, and the guarantees were only meant to cover Lincolnway's debts. Similarly, Dr. Bubala testified that he had no knowledge of Holz's debt and only intended to guarantee the debts of his new corporation. While Zouk claims to have informed Holz of the purpose of the guarantee, the evidence is uncontroverted that this was never directly communicated to Dr. Bubala. The form guaranty contained, *inter alia*, the following language: "* * * I hereby guarantee the full and prompt payment to said

Bank * * * of any and all indebtedness * * * whether now owing or due, or which may hereafter, from time to time, be owing or due * * *."

Dr. Bubala paid $15,000 for the assets of Aurora Imports. These funds were used by Holz to pay off an Internal Revenue Service lien. Linconway began operation in October of 1973 as a corporation with Dr. Bubala as sole shareholder; Holz operated the dealership for Dr. Bubala. In February 1974, Dr. Bubala sold Lincolnway to Fox Valley Imports. Only the $20,000 downpayment was ever paid, however, and Fox Valley eventually went bankrupt. Dr. Bubala testified that after Lincolnway's debts were paid he realized only $10,000 from the sale.

On February 20, and June 28, 1974, the Bank allowed Holz to renew his unpaid note. These renewed notes were secured by a trust deed to Holz's home. When Holz defaulted on the notes, the Bank foreclosed on the home and realized approximately $2,700 to reduce Holz's indebtedness. The Bank then sought payment from Holz and from the Bubalas as guarantors of Holz's debts. Holz filed bankruptcy and was discharged in bankruptcy relative to any debts owed to the Bank.

On September 25, 1975, the Bank filed a one-count complaint against Holz and the Bubalas alleging the execution of the renewal note on June 28, 1974, and the Bubalas' guaranty dated June 28, 1974. Subsequently a count II was added acknowledging that the guaranty had actually been signed in October of 1973. The Bubalas filed an affirmative defense alleging that the guaranty was to be used only for the future credit of Lincolnway, that the Bank fraudulently inserted the June 28 date on the guaranty, that Holz's renewals of the note were outside the guaranty, and that the guaranty and the note did not expressly refer to one another. The Bubalas also filed a counterclaim against the Bank containing these same allegations. The Bank filed a motion to strike the counterclaim and after a hearing, Judge Black issued an opinion letter dated December 15, 1976, "granting" the motion to dismiss. However, no order was entered on this letter until some two years later. After the opinion letter, the Bubalas filed a "motion for costs and fees" under section 41 of the Civil Practice Act based on these same allegations.

This case went to trial before Judge Douglas on March 11, 1977. Midway through trial, a second amended complaint was filed. Count II of this amended complaint alleged an agency theory of liability claiming Holz was acting and borrowing on authority of his principal, Bubala. Judgment was entered against the Bank on its complaint. $2,500 was awarded the Bubalas against the Bank for attorney's fees and costs. After the entry of this order, the Bank's trial counsel withdrew in favor of its present counsel. After gaining an extension of time, the Bank filed a post-trial motion. On June 12, 1979, the trial court entered an order again denying judgment against the Bubalas. However, the grant of legal fees

was reversed, and the prior opinion letter of Judge Black was incorporated into the order.

The Bank appeals, claiming error in not awarding judgment against the Bubalas. The Bubalas cross-appeal, claiming error in the denial of their counterclaim and motion for fees.

### Parol Evidence Rule

The Bank's principal argument is that the guaranty agreement is clear and unambiguous and that under the parol evidence rule a court is obliged to enforce the agreement as written. (*National Acceptance Co. v. Exchange National Bank* (1968), 101 Ill. App. 2d 396, 243 N.E.2d 264.) The Bubalas' principal response is to argue that the case was tried on an agency theory and that the parol evidence question has been waived. The trial court specifically found that the Bank's theory of the case was based on agency. In its written closing arguments to the trial court, the Bank itself relied on parol evidence in support of its agency theory. It was not until the brief in support of its post-trial motion that the Bank adopted the theories it now urges on appeal.

■■ There is a split of authority among jurisdictions that have considered the question of whether or not a party may first assert the parol evidence rule on appeal. (See Annot., 81 A.L.R. 3d 249 (1977).) After reviewing this conflicting authority, our supreme court held that a reviewing court may consider parol evidence presented at trial in the absence of a timely objection. The court specifically held that a parol evidence objection "may not be made, for the first time, on appeal." (*Tolbird v. Howard* (1969), 43 Ill. 2d 357, 362, 253 N.E.2d 444, 447.) In the instant case, however, the Bank is not attempting to assert a theory that it totally failed to argue before the trial court. As indicated above, the Bank's post-trial motion included a claim that parol evidence should be excluded from consideration. (*Cf. Steinberg v. Keepper-Nagel Real Estate Investments, Inc.* (1973), 14 Ill. App. 3d 619, 303 N.E.2d 46, where the defendant's post-trial motion admitted an ambiguity in the contract making parol evidence necessary.) The parol evidence rule is not really a rule of evidence, but a substantive rule of contract law. (*Preston A. Higgins & Co. v. Stevenson* (1975), 28 Ill. App. 3d 150, 328 N.E.2d 79.) Therefore, instant objection is not normally a prerequisite for later reliance on the rule. (See 30 Am. Jur. 2d *Evidence* §1022 (1967).) In sum, we hold that under the facts of this case the Bank has not waived the argument it seeks to advance on appeal.

■■ Where a contract of guaranty is unequivocal in its terms it must be interpreted according to the language used. It is not what one of the parties may have intended that is controlling, but what is shown by the contract to have been the intention of both parties. (*National Acceptance*

*Co. v. Exchange National Bank* (1968), 101 Ill. App. 2d 396, 402, 243 N.E.2d 264, 267.) This rule is applicable in cases, like the instant one, where the guaranty agreement contains broad statements of guarantor liability. (See *Jacobson v. Devon Bank* (1976), 39 Ill. App. 3d 1053, 351 N.E.2d 254.) Given the fact that the guaranty agreement clearly includes "any and all indebtedness * * * whether now owing or due," we agree with the Bank that the agreement covers Holz's debts incurred in the operation of Aurora Imports as well as the new debts of Lincolnway.

■ There are, of course, well recognized exceptions to the parol evidence rule which allow for the use of extrinsic evidence of the parties' intentions even when the text of the agreement is unambiguous. Thus "parole evidence is admissible to establish the fact of fraud or of a mistake * * *." (*Schuline v. Pelzer* (1971), 2 Ill. App. 3d 791, 793, 276 N.E.2d 832, 834, quoting 45 Am. Jur. *Reformation of Instruments* §113 (now 66 Am. Jur. 2d *Reformation of Instruments* §118, at 644 (1973)).) However, it is clear that if there was a mistake in the intention of the Bubalas, it was not a mutual mistake allowing for reformation based on parol evidence. A "mutual mistake" is one common to both contracting parties, wherein each labors under the *same* misconception. Thus when there is a mutual mistake the parties are in actual agreement, but the agreement in its written form does not express the parties' real intent. (See Black's Law Dictionary 920 (5th ed. 1979).) At most, in the instant case each party has expressed a different understanding of the terms of the contract. In such a case, unequivocal written terms must be interpreted according to the language used. *National Acceptance Co.*

■ The Bubalas assert the existence of fraud in that the Bank inserted an incorrect date into the body of the guaranty agreement. It is well established that an essential element of fraud is reliance by the allegedly injured party. (*Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 89; see also 19 Ill. L. & Prac. *Fraud* §13 (1956).) In the instant case it cannot be said that the filling in of an incorrect date after the guaranty was signed constitutes an act which was relied on by the Bubalas. The guaranty in question is a continuing one covering past, present, and future debts. Thus, the date of signing would not control which debts were affected and cannot be said to be a material term with a materiality also being a necessary element for fraud. (*Broberg*; 19 Ill. L. & Prac. *Fraud* §12 (1956).) In sum we agree with the Bank's argument that none of the exceptions to the parol evidence rule are applicable to the facts of this case and the agreement must be enforced as written.

## Counterclaim and Section 41 Claim

■ In light of the above discussion of fraud, we hold that the trial court did not err in dismissing the Bubalas' counterclaim, which was also based

on a theory of fraud. However, different considerations apply to the Bubalas' claim for expenses and attorney's fees.

Section 41 of the Civil Practice Act provides in pertinent part:

"Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal." (Ill. Rev. Stat. 1977, ch. 110, par. 41.)

The Bank's original complaint alleged that the guaranty agreement was signed on June 28, 1974. In fact, the agreement was signed in November of 1973 with the June 28 date filled in by the Bank. The Bubalas argue that this untrue allegation entitles them to a reimbursement for their entire cost of defending this suit. However, section 41 clearly limits to expenses and fees "actually incurred * * * by reason of the untrue pleading." The Bubalas' section 41 petition fails to allege any costs or fees directly resulted from the defense of this one untrue allegation. Thus we find no error in the trial court's denial of this petition.

For the foregoing reasons those parts of the judgment of the Circuit Court of Du Page County dismissing the Bubalas' counterclaim and their section 41 petition are affirmed. The remainder of the judgment is reversed, and this cause is remanded with directions that judgment be entered in favor of the Bank on its complaint against the Bubalas and that the trial court determine the amount of the judgment.

Affirmed in part, reversed in part, remanded with directions.

SEIDENFELD, P. J., and VAN DEUSEN, J., concur.