CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Plaintiff,

v.

John R. STANLEY, Defendant.

No. 84 C 0142.

United States District Court, N.D. Illinois, E.D.

April 15, 1985.

Robert F. Finke, Daniel Harris, Mayer, Brown & Platt, Chicago, Ill., for plaintiff.

Roger J. McFadden, Roger L. Longtin, Schuyler, Roche & Swirner, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

Before the Court is plaintiff's motion for summary judgment pursuant to Fed.R. Civ.P. 56, and its motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) or in the alternative to transfer the defendant's counterclaim to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). For the reasons stated herein, plaintiff's motion for summary judgment against defendant is granted. Plaintiff's motion to transfer is granted and therefore defendant's counterclaim is transferred to the United States District Court for the Southern District of New York. The Court leaves a decision on plaintiff's motion for judgment on the pleadings to the transferee court.

## I. FACTS

This suit was brought by the plaintiff Continental Illinois National Bank and Trust Company of Chicago (CINB) individually and as loan agent for thirteen other banks against the defendant, John R. Stan-

ley. The suit seeks to recover on Stanley's personal guaranty in connection with loans made by Continental and the other banks to four companies controlled by Stanley (collectively referred to as "GHR"). The relevant facts, as set forth in CINB's complaint, Stanley's Answer and Counterclaim and the affidavit of Robert M. Steck, are not in dispute.

Stanley is the controlling stockholder of GHR. On December 23, 1981, GHR and the Banks entered into a Credit Agreement. As a condition of the Credit Agreement, CINB required Stanley to provide a joint and several personal guaranty. That same day, Stanley executed and delivered to CINB, as loan agent for the Banks, a written, personal guaranty.

The guaranty provides that Stanley "unconditionally ... guarantee[s] the full and prompt payment and performance when due, whether by acceleration or otherwise, and at all times thereafter, of all obligations of [GHR] to the Banks ... howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, or now or hereafter existing or due or to become due ... under and in connection with the ... Credit Agreement." The guaranty further provides that "[t]he right of recovery against [Stanley] under this guaranty is, however, limited to the amount of SEVEN HUNDRED FIFTY MILLION DOLLARS ($750,000,000) plus interest on such amount ... plus all expenses of enforcing this guaranty."

On April 13, 1982, GHR and the Banks amended the Credit Agreement to provide for an additional loan of $50 million. In January of 1983, GHR filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code which is an automatic act of default under Section 14.-1.11 of the Credit Agreement. Because of these defaults, GHR now owes CINB and the Banks the outstanding principal amount of its loans under the Credit Agreement, $388,444,139.34, plus all accrued interest. As of August 13, 1984, the accrued interest totaled $85,381,264.83 and continues to accrue at a daily rate of $164,847.32.

The Banks seek judgment against Stanley on his personal guaranty for unpaid principal and interest in the amount of approximately $474 million as of August 13, 1984. CINB and the Banks also ask for attorneys' fees and costs in this matter.

Stanley filed an eight-count counterclaim against CINB. The counterclaim alleges that CINB overreached in extending credit to GHR, that CINB wrongfully secured and exercised control over GHR's finances and operations, and that CINB intentionally prevented GHR from receiving credit from other sources. The counterclaim further alleges that CINB's activities caused GHR's inability to perform under the Credit Agreement and thus precipitated GHR's voluntary bankruptcy proceeding.

Stanley moved, pursuant to 28 U.S.C. § 1404(a), to transfer this action to the United States District Court for the District of Louisiana. CINB opposed the motion to transfer and, in addition, moved to dismiss all counts of the counterclaim on the grounds that Stanley lacked standing to prosecute these claims. The Court denied the Motion to Transfer by its order dated May 25, 1984. *Continental Illinois National Bank & Trust Company of Chicago v. Stanley*, 585 F.Supp. 610 (N.D.Ill. 1984). The Court also granted CINB's motion to dismiss as to the causes of action arising under the federal antitrust statutes and common law. The motion was denied as to Count IV of the counterclaim which arises under the Bank Holding Company Act Amendments of 1970, 12 U.S.C. § 1971, *et seq.* ("BHCA"). *Continental Illinois National Bank & Trust Company of Chicago v. Stanley*, 585 F.Supp. 1385 (N.D.Ill. 1984). On August 22, 1984, CINB filed an Answer to Count IV of the counterclaim which effectively denied or demanded proof of the factual allegations.

## II. DISCUSSION

In support of a motion for summary judgment, the moving party has the burden of showing that there is no dispute as to any genuine issue of material fact and that it is entitled to judgment as a matter of

law. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1*, 603 F.2d 7, 10 (7th Cir. 1979). The nonmoving party is entitled to all reasonable inferences that can be drawn in its favor from the evidence in the record. *ITT Diversified Credit Corp. v. Kimmel*, 508 F.Supp. 140 (N.D.Ill.1981). However, to create a question of fact, an adverse party responding to a properly made and supported summary judgment motion must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P.; *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983). A party may not rest on mere allegations or denials of his pleadings; similarly, a bare contention that an issue of fact exists is insufficient to raise a factual issue. *Id.* Rule 56 clearly requires that an adverse party set forth specific facts showing a genuine issue for trial. *Id.*

Stanley asserts affirmative defenses which allege that there was a failure of consideration for the personal guaranty; that the guaranty was secured by duress; that plaintiff breached certain implicit covenants contained in the Credit Agreement; that the conduct of certain of the Banks rendered it impossible for GHR to perform under the Credit Agreement; and that CINB has failed to mitigate the damages, if any, it has suffered.

### A. *Failure of Consideration*

Defendant's Fourth and Eighth Affirmative Defenses allege that Stanley's personal guaranty is unenforceable for lack of consideration and that CINB failed to provide GHR with sufficient financing in breach of the Credit Agreement. CINB argues that these defenses are meritless because (1) the guaranty recites on its face that it was executed for consideration, and (2) it was executed contemporaneously with and in consideration for the Credit Agreement.

■ In determining the rights of the parties to a guaranty, as in determining the rights and obligations flowing from any contract, we must look first to the language in the document itself. *Blackhawk Hotel Associates v. Kaufman*, 80 Ill. App.3d 462, 465, 35 Ill.Dec. 875, 878, 400 N.E.2d 12, 14–15 (1st Dist.1979). This rule is applicable in cases, like the instant one, where the guaranty agreement contains broad statements of guarantor liability. *Bank of Naperville v. Holz*, 86 Ill.App.3d 533, 41 Ill.Dec. 604, 608, 407 N.E.2d 1102 (2d Dist.1980).

■ In the present case, it is undisputed that Stanley executed the personal guaranty at the same time as the original Credit Agreement was executed. Therefore, under well-established Illinois law, there is adequate consideration for a guaranty, where as here, it is executed contemporaneously with the creation of the principal loan. *ITT Diversified Credit Corp. v. Kimmel, supra*, 508 F.Supp. at 143; *First National Bank of Red Bird v. Chapman*, 51 Ill.App.3d 738, 740, 9 Ill.Dec. 426, 429, 366 N.E.2d 937, 940 (5th Dist.1977). In addition, the guaranty agreement clearly includes "all obligations of the Debtors to the Banks ... now or hereafter existing or due or to become due ..., under and in connection with the Restated Credit Agreement...." Therefore, even if Stanley argued that the subsequent amendments to the original Credit Agreement were not guaranteed due to a failure of consideration, this argument fails because the guaranty clearly covers all future indebtedness of GHR to the Banks in connection with the original Credit Agreement.

■ Stanley also alleges a failure of consideration subsequent to the contemporaneous execution of the guaranty. In short, his counterclaim alleges that the full amount of credit which was to be provided by the Banks under the Credit Agreement was not, in fact, extended. However, Stanley does not support this allegation with any affidavit or other source of proof other than his bald assertion that the Banks failed to extend GHR credit up to the maximum limit of $750 million contained in the Credit Agreement. Since Stanley does not meet his burden of establishing by affidavit that there was some understanding or

oral agreement that the Banks would extend credit up to the $750 million maximum, the Court finds no genuine issue of material fact regarding the sufficiency of consideration supporting the guaranty and therefore holds, as a matter of law, that Stanley's guaranty is supported by sufficient consideration.

### B. *Duress*

Stanley argues that CINB's misconduct subsequent to the guaranty's execution deprived him of any choice but to provide the guaranty demanded by the Banks. These allegations are contained in Stanley's counterclaim and state that the threat of imminent bankruptcy and a credit cutoff by the Banks forced Stanley to execute a personal guaranty to back up the credit extension. CINB argues that these allegations merely state that it insisted on Stanley's personal guaranty as a condition of the Credit Agreement, which is an issue commonly to be bargained for, and therefore no duress occurred.

■ Duress is defined as including the imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress of another, whereby his free agency is overcome. *Stavins v. Stavins*, 70 Ill.App.3d 622, 26 Ill.Dec. 927, 388 N.E.2d 928 (1st Dist.1979). To invalidate an agreement on the basis of duress, a party must show that he was induced by a wrongful act or threat of another to execute an agreement under circumstances which deprived him of the exercise of his free will. *Kaplan v. Keith*, 60 Ill.App.3d 804, 18 Ill.Dec. 126, 377 N.E.2d 279 (1st Dist.1978). Duress does not exist merely where consent to an agreement is secured because of hard bargaining positions or the pressure of financial circumstances. *Higgins v. Brunswick Corp.*, 76 Ill.App.3d 273, 32 Ill.Dec. 134, 138, 395 N.E.2d 81 (1st Dist.1979). In cases where agreements have been invalidated because of duress, the conduct of the party obtaining the advantage is tainted with some degree of fraud or wrongdoing. *Id.*

■ In the present case, Stanley's allegations of duress are not supported by any affidavits or other sources of proof. At best, the allegation of duress is inferred from the equivocal fact that CINB requested Stanley's personal guaranty to back up further credit to GHR. This inference is insufficient to avoid a motion for summary judgment. Stanley has an obligation to present specific facts indicating that a genuine issue does exist for trial. *Posey v. Skyline, supra*, 702 F.2d at 106. This requirement has not been met. The Court has no obligation to hypothesize or speculate about the various implications of Stanley's factual presentation. *Id.* Unsupported by other evidence, Stanley's inference of duress fails to establish a genuine issue of material fact, and therefore, as a matter of law, the Court finds that no duress occurred in the execution of defendant's personal guaranty.

### C. *Discharge of Guaranty*

Stanley argues that he has been discharged from liability on the guaranty because of the "sorry litany of misconduct" by CINB, as recited in Stanley's counterclaim and affirmative defenses. This "sorry litany" alleges that: (1) on occasion, CINB declined to extend new credit to GHR; (2) on other occasions CINB extended credit only on terms and conditions GHR found disagreeable; (3) CINB sometimes exercised its broad powers under the Credit Agreement in a manner GHR found undesirable; and (4) CINB failed to mitigate its damages, if any.

■ CINB counters that these allegations are conclusory and unsupported by affidavits. In addition, any defense which GHR would have against CINB cannot be asserted by Stanley as a defense to his personal guaranty.

■ As the Court has stated, in the absence of an ambiguity, the plain language of the contract controls and no extrinsic evidence need be adduced. *Blackhawk Hotel Associates v. Kaufman, supra*, 80 Ill.App.3d at 465, 35 Ill.Dec. 875, 400 N.E.2d 12. In the present case, the

personal guaranty covers all of GHR's liabilities "notwithstanding any right or power of any Debtor or anyone else to assert any claim or defense as to the invalidity or unenforceability of any such obligation, and no such claim or defense shall affect or impair the obligations of the undersigned hereunder." This language clearly prevents Stanley from asserting nonperformance by CINB of its agreement with GHR as a defense to his personal guaranty. In addition, the allegations of CINB's misconduct in Stanley's counterclaim and affirmative defenses are not supported by affidavits or other sources of proof. The bald assertions of misconduct cannot be used to avoid a motion for summary judgment properly made by CINB. *Posey v. Skyline Corp., supra,* 702 F.2d at 105. Therefore, the Court finds that, as a matter of law, Stanley is not discharged from his personal guaranty due to CINB's alleged misconduct.

### D. *Transfer of Stanley's Counterclaim*

CINB has moved for judgment on the pleadings regarding Stanley's counterclaim or in the alternative to transfer the counterclaim to the United States District Court for the Southern District of New York. In support of its motion to transfer, pursuant to 28 U.S.C. § 1404(a), CINB cites an existing action in the transferee district brought by GHR against the Banks. That action contains allegations identical to those contained in Stanley's counterclaim, as originally filed. After CINB's motion to dismiss the counterclaim for lack of standing, the only count remaining here involves the anti-competitive tying arrangement provision of the Bank Company Holding Act. 12 U.S.C. § 1972(1)(C) and (E).

Stanley argues that CINB has failed to show that his compulsory counterclaim here can be severed and then transferred to the Southern District of New York. However, since CINB's motion for summary judgment based on Stanley's personal guaranty is granted here, there is no problem with severing and the counterclaim may be transferred along with the other remaining issues, if the proper factors are met under § 1404(a).

In order to show that a § 1404(a) transfer is proper, the moving party must establish that (1) venue is proper in the transferor court; (2) venue is proper in the transferee court, and (3) the transfer is for the "convenience of the parties and witnesses, in the interest of justice." *Central States, Southeast and Southwest Areas Pension Fund v. Brown,* 587 F.Supp. 1067, 1069 (N.D.Ill.1984). Although the party seeking transfer bears the burden of establishing that a transfer of venue is proper, the burden under § 1404(a) is substantially less than a transfer under the doctrine of forum non conveniens. *Id.; see Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

In the present case, the remaining count of Stanley's counterclaim is based on a federal statute, and therefore venue under 28 U.S.C. § 1391(b) is proper where all defendants reside or where the claim arose. In addition, under § 1391(c), a corporation may be sued where it is incorporated, licensed to do business, or doing business. Venue is proper in this district because plaintiff-counterdefendant CINB resides here and in the Southern District of New York because CINB does business there.

Since the counterclaim was filed by Stanley as defendant-counterplaintiff, CINB will be treated as plaintiff-counterdefendant when moving for transfer here. While CINB chose this district for its claim against Stanley, CINB's choice does not constitute consent or waiver to venue here regarding the counterclaim. *Independent Bankers Ass'n. of America v. Conover,* 594 F.Supp. 635, 640 (N.D.Ill.1984). Indeed, the Court believes that it would be unfair to CINB and the Banks to have to litigate two lawsuits instead of one when GHR's claim in the Southern District of New York and Stanley's counterclaim here arise out of the same controversy, *i.e.,* CINB's alleged misconduct in relation to the Credit Agreement. *Id.* Stanley offers nothing in the way of factual allegations

which show that he will be inconvenienced by the transfer. Therefore, the unfairness and inconvenience to CINB outweighs the inconvenience to Stanley.

 In addition, the interests of justice would be best served if the counterclaim was transferred to the Southern District of New York for consolidation with part of GHR's action there. As a general rule, cases should be transferred to districts where related actions are pending. *SEC v. First Nat. Finance Corp.*, 392 F.Supp. 239, 241 (N.D.Ill.1975). The counterclaim's transfer would prevent a duplicity of actions arising out of a single controversy. Stanley's allegations in Count IV of the counterclaim are identical to the allegations contained in the Fourth Claim for Relief Against The Bank Defendants in GHR's action in the Southern District of New York. Since the consolidation of Count IV of Stanley's counterclaim with the Fourth Claim in GHR's action would prevent a duplicity of actions, the Court finds a § 1404(a) transfer to be appropriate. Accordingly, CINB's motion to transfer Count IV of Stanley's counterclaim to the Southern District of New York is granted.

### III. CONCLUSION

Plaintiff's motion for summary judgment on its complaint is granted. Its motion to transfer defendant's counterclaim, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Southern District of New York is granted. Therefore, the Court does not reach plaintiff's motion for judgment on the pleadings regarding defendant's counterclaim.

Accordingly, the Court enters judgment in plaintiff's favor and against defendant in the amount of $513,883,302.17: $388,444,-139.34 for principal; $85,381,264.83 for interest through August 13, 1984; and $40,-057,898.00 for interest from August 13, 1984 to April 12, 1985. In addition, pursuant to Section 18.8 of the Credit Agreement, the Court awards plaintiff CINB its reasonable attorneys' fees and costs incurred in this action.

IT IS SO ORDERED.