**TMF TOOL CO., Plaintiff,**

v.

**H.M. FINANCIERE & HOLDING, S.A., et al., Defendants.**

No. 87 C 8620.

United States District Court,
N.D. Illinois, E.D.

June 15, 1988.

Jack Joseph, Michael P. Myers, Joseph & Myers, Chicago, Ill., for plaintiff.

Barry S. Alberts, Schiff, Hardin & Waite, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Defendant Hans Muller moves to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2), on the basis that plaintiff fraudulently enticed Muller into the jurisdiction for the purpose of serving him with process.[1] Muller alternatively re-

quests dismissal on the grounds that plaintiff has not alleged a predicate act necessary to achieving jurisdiction under Ill.Rev. Stat. ch. 110 § 2–209 (the "Illinois long-arm statute"). As a further alternative, Muller moves for dismissal under Fed.R.Civ.P. 12(b)(6), for failure to state a cause of action upon which relief can be granted. Although defendant H.M. Financiere & Holding, S.A. ("Financiere") does not contest the court's personal jurisdiction, Financiere joins Muller in the motion to dismiss pursuant to Rule 12(b)(6), based in part upon the ground that plaintiff has not pleaded fraud with particularity under Fed. R.Civ.P. 9(b). For the following reasons, the court dismisses the complaint as to both defendants.

*Relevant Facts*

Muller is a citizen and resident of Switzerland and the chief executive officer of Financiere, a Swiss corporation. Complaint, ¶¶ 2–3. Muller and Financiere were introduced to plaintiff's agents by Robert C. Siebengartner.[2] Complaint, ¶ 10. Plaintiff and Siebengartner had agreed that the latter and his associates would loan plaintiff $350,000 and purchase its shares; however, after plaintiff's delivery of a note and shares, Siebengartner failed to provide $128,000 of the total sum. Complaint, ¶ 9. Plaintiff then alleges that:

> In conversations in or about October, 1986 between Siebengartner, TMF's president Kastory, and Muller, ... Muller proposed ... that he or his company, as a stopgap measure, loan to TMF the $128,000 of which TMF was then in desperate need, pending the replacement of these funds by Siebengartner. Muller said that he would require, as security for the $128,000 loan, a check from TMF postdated to November, 1987, payable to Muller's company, the defendant Financiere, in the amount of $175,000 and a note or other writing acknowledging the

---

**1.** For the same reason, Muller also moves for dismissal pursuant to Rule 12(b)(5). Although the choice of rules is immaterial to the outcome, it is more proper to bring the motion under Rule 12(b)(2); therefore, this court will consider Muller's motion under that rule. *See K Mart*

*Corp. v. GenStar Industries Co., Ltd.,* 110 F.R.D. 310, 311 (E.D.Mich.1986).

**2.** Siebengartner is a defendant in a related case, *TMF Tool Co., Inc. v. Robert C. Siebengartner and R.C. Siebengartner Inc.,* No. 87 C 6340 (N.D. Ill. filed July 17, 1987).

entire $350,000 debt that Siebengartner had originally agreed to provide. By reason of the dire straits into which Siebengartner had placed TMF, TMF's president delivered the post-dated check and note required, even though those instruments did not properly evidence the agreement between the parties.

Complaint, ¶¶ 10–11.

Plaintiff never received the outstanding funds from Siebengartner. Complaint, ¶ 13. As a result, plaintiff could not repay Muller and Financiere. Plaintiff claims fraud because:

... plaintiff has come to believe that defendants and Siebengartner have been and were in October, 1986 during the events alleged above engaged in a conspiracy to obtain monies and/or obligations from TMF without consideration and by fraud. TMF is informed and believes that the process by which TMF was forced to deliver instruments to defendants which purport to evidence obligations of $175,000 and $350,000, even though defendants advanced only $128,000, was the process by which this fraud was accomplished. Plaintiff is further informed and believes that the process whereby TMF delivered instruments purporting to evidence obligations in the total principal amount of $653,000 to defendants and their business associate Siebengartner for a total benefit to TMF of $128,000 (less the $28,000 of this amount which was delivered by co-investors to Siebengartner) constitutes a fraud upon TMF.

*Id.*

In deciding Muller's Rule 12(b)(2) motion, the court also considers the contents of three letters submitted as exhibits. In an August 19, 1987, letter to Anton Kastory, plaintiff's president, Muller wrote in part that:

I am now planning my visit to America between Oct. 7 and 17. Perhaps you will have the courtesy to let me know whether the early part of these dates would be convenient for a stop-over in Chicago. UNION BANK OF SWITZERLAND, via their Chicago Branch—will handle our financial affairs with you, mid-November.

But I think we rather first once again discuss this as Friends, as we did in Miami. Or else, should you be 'afraid' of anything or worried, gladly with your Lawyers.

Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, Exhibit. On August 25, 1987, plaintiff's attorney responded to Muller's letter:

At this time, we should like to request that you advise this office promptly what, if anything, is claimed by either you personally or H.M. Financiere & Holding, S.A. as obligations owed to TMF Tool Co., Inc. and/or Anton Kastory. Please advise the dates, amounts, nature of the consideration and any other details which may be of assistance in connection with any claim which you may have....

Mr. Kastory has indicated that he will be available on October 8, 1987 for a conference which is within the acceptable dates in your letter.

Defendants' Memorandum in Support of Motion to Dismiss, Exhibit A. Muller subsequently wrote plaintiff's attorney:

We look forward to review all of this with Mr. Kastory and you in person, Oct. 6, before deciding what steps must be taken if Mr. Kastory's attitude towards us should not be a correct one, which would be hard to believe after what we did for him.

*Id.,* Exhibit B.

### *Service of Process upon Muller*

The plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction. The allegations of the complaint and exhibits must be taken as true unless controverted by the defendants' affidavits or exhibits, although conflicts among the material submitted by each party must be resolved in favor of the plaintiff. *Turnock v. Cope,* 816 F.2d 332 at 333 (7th Cir.1987), citing *O'Hare International Bank v. Hampton,* 437 F.2d 1173, 176 (7th Cir. 1971).

■ Muller claims that service upon him was invalid under the "fraudulent enticement doctrine." That rule operates to quash service upon a transient defendant who is in a jurisdiction exclusively to discuss settlement and reasonably relies upon the plaintiff's agreement to do so, but the plaintiff, without notice to defendant, has decided to sue. *E/M Lubricants, Inc. v. Microfral, S.A.R.L.*, 91 F.R.D. 235, 238 (N.D.Ill.1981). To apply the rule, the court must determine whether: 1) the parties agreed to have a settlement discussion; 2) the defendant entered the jurisdiction only for that purpose; and 3) the plaintiff failed to notify the defendant, before the latter arrived in the jurisdiction, that he might be served.

Muller claims that the letters it offers as exhibits indicate that the parties met on October 6, 1987, to conduct a settlement conference. Neither party disputes that a meeting was held on that date in the office of plaintiff's attorney. Defendants' Exhibit B. At his office, plaintiff's attorney served Muller with process. *TMF Tool Co. v. H.M. Financiere & Holding, S.A., and Hans Muller*, No. 87 C 8620 (N.D.Ill., October 6, 1987, summons to Hans Muller, docketed October 7, 1987). Muller argues that he was served by plaintiff at the conclusion of unsuccessful settlement discussions and that such service is improper.

■ Plaintiff counters that the service is not invalid because Muller initiated the meeting and also traveled to the United States for purposes other than settlement. Further, plaintiff claims that Muller never intended to discuss settlement, so the parties were not meeting for that reason.

Plaintiff's assertions do not preclude application of the "fraudulent enticement doctrine." It is apparent that the parties agreed to attempt settlement. The proposal in Muller's letter of August 19, 1987 that the parties discuss their differences "as friends" or, upon Kastory's request, with their lawyers, clearly shows Muller's intent to meet for purposes of settlement. Plaintiff's other exhibit, Muller's letter of September 8, 1987, does not refute this conclusion. In that letter, Muller's comment that he would decide "what steps must be taken if Mr. Kastory's attitude towards us should not be a correct one" cannot be read as Muller's refusal to settle. Further, it is irrelevant that the meeting occurred at Muller's suggestion. Muller attended only because plaintiff agreed to discuss the dispute. *E/M Lubricants, supra*, 91 F.R.D. at 237.

As for the reason for Muller's trip to Chicago, plaintiff's own exhibit again supports Muller's position. In the August 19, 1987 letter, he asked Kastory whether it would be convenient for Muller to "stopover in Chicago" for a meeting. No other purpose for his Chicago visit is evident in the other letters.

■ Muller also contends that plaintiff never informed him that he might be served with process in Chicago. No exhibit or pleading contradicts this position. Enticement may be inferred from the plaintiff's failure to notify Muller when it decided to file suit. *Id.* Moreover, service is invalid unless, when settlement discussions collapse, the plaintiff gives the defendant an opportunity to leave the jurisdiction prior to being served. *K Mart, supra*, 110 F.R.D. at 313. This rule applies even when service is not the sole purpose of the meeting, and the plaintiff intended to pursue settlement. *Id.* at 314. Plaintiff does not refute the accusation of his alleged failure to warn Muller.

Muller has thus established the elements of fraudulent enticement. Plaintiff has failed to offer any conflicting evidence. Therefore, the court finds that Muller was not properly served.

Before deciding whether to quash service or dismiss the complaint, the court must determine whether plaintiff could properly serve Muller by other means. *Id.* at 315. Because Muller is a nonresident and it is unlikely that Muller will return to this jurisdiction, the only other avenue provided for service is the Illinois long-arm statute, Ill.Rev.Stat. ch. 110 § 2–209.[3]

---

**3.** Ill.Rev.Stat. ch. 110 § 2–209 provides, in pertinent part: (a) Any person, whether or not a

*Long–Arm Jurisdiction over Muller*

In order to establish jurisdiction under the long-arm statute, the plaintiff must allege that Muller has performed one of the statutorily enumerated acts. The complaint contains allegations of fraud. Therefore, the court will address whether Muller has committed a tortious act within Illinois so as to submit himself to jurisdiction pursuant to Section 2–209(2).

■ Plaintiff has the burden of establishing a *prima facie* case of jurisdiction under the long-arm statute. *Turnock, supra,* 816 F.2d at 335. A key jurisdictional element is that the tortious act must be committed *within* Illinois. Ill.Rev.Stat. ch. 110 § 2–209(2). However, plaintiff has not alleged the occurrence of any aspect of the alleged fraud in Illinois. The fact that plaintiff, an Illinois corporation, may suffer an economic loss in Illinois is not enough to confer jurisdiction when all the conduct contributing to the injury occurred outside Illinois. *Turnock, supra,* 816 F.2d at 335. Because plaintiff does not allege occurrence of a tort within the state, the long-arm statute does not apply. In light of this finding and the determination that service occurred through fraudulent enticement, the court must dismiss the complaint against Muller for lack of jurisdiction.

*Rule 12(b)(6) Motion to Dismiss*

For purposes of this motion, the court must accept all well-pleaded, but not conclusory, allegations as true. *Republic Steel Corp. v. Pennsylvania Engineering Corp.,* 785 F.2d 174, 182–83 (7th Cir.1986).

■ Financiere asserts that plaintiff has failed to state a cause of action in Counts I and II primarily because it has not pleaded fraud with particularity pursuant to Fed.R.

Civ.P. 9(b). The basis for both counts is defendants' alleged fraud. In Count I, plaintiff requests a preliminary injunction to prevent defendants from negotiating the check or note, because those instruments allegedly do not reflect plaintiff's obligation to Financiere. The complaint alleges that this financial arrangement comprised part of a scheme to defraud plaintiff. In determining whether to issue a preliminary injunction, the court must assess the likelihood of plaintiff's success on the merits. *See Maxim's Ltd. v. Badonsky,* 772 F.2d 388, 390 (7th Cir.1985). A properly supported claim for fraud thus is integral to plaintiff's entitlement to an injunction. Count II requests reformation of the instruments in order to conform to the actual agreement between the parties. An instrument may be reformed when fraud or mutual mistake has occurred. *Grundy County National Bank v. Cavanaugh,* 105 Ill.App.3d 718, 61 Ill.Dec. 448, 434 N.E. 2d 803 (3rd Dist.1982). The complaint does not allege mutual mistake as a basis for reformation; therefore, the court will not consider that issue.

The elements of a cause of action for fraudulent misrepresentation are:

(1) false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance.

*Soules v. General Motors Corp.,* 79 Ill.2d 282, 37 Ill.Dec. 597, 402 N.E.2d 599 (1980). The plaintiff's reliance must be justified. *Id.*

■ Plaintiff has not sufficiently alleged the elements of fraud. The complaint does

---

citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;

(3) The ownership, use, or possession of any real estate situated in this State;

(4) Contracting to insure any person, property or risk located within this State at the time of contracting;

(5) With respect to actions of dissolution of marriage and legal separation, the maintenance in this State of a matrimonial domicile at the time this cause of action arose or the commission in this State of any act giving rise to the cause of action.

not assert that Muller or Financiere promised plaintiff that Siebengartner *would* replace the funds that Financiere loaned. *See* Complaint, ¶ 11. Instead, plaintiff pleads only that it "has come to believe" that defendants and Siebengartner "conspired" against it. Complaint, ¶ 13.[4] Without more, the court cannot infer other than that plaintiff entered the relationship with defendants at its own risk. The fact that plaintiff may have been in "dire straits" likewise does not support a cause of action. *See Continental Illinois Bank & Trust Co. v. Stanley*, 606 F.Supp. 558, 562 (N.D. Ill.1985) (under Illinois law, duress, or taking undue advantage of another's business stress, does not exist merely where an agreement is made because of financial pressure).

Accordingly, both counts are dismissed. In the absence of a proper allegation of fraud, plaintiff cannot demonstrate *any* likelihood of success on the merits. This factor alone defeats the request for an injunction in Count I. Count II is dismissed because fraud is an essential element to the reformation claim.

The court also finds that Count III must be dismissed. An equitable accounting is proper only when the accounts between the parties are so complicated that a special master and jury cannot adequately assess damages. *Radial Lip Machine, Inc. v. International Carbide Corp.*, 76 F.R.D. 224, 228 (N.D.Ill.1977). Such is not the case here. Plaintiff's allegation that "[t]he amount of credits due to TMF from Siebengartner should be credited against the $128,000 which defendants loaned to TMF, and an accounting taken to determine the net amount of credits and debits between the parties" does not demonstrate the complexity that justifies an accounting. *See* Complaint, Count III, ¶ 23(b).

## CONCLUSION

For the foregoing reasons, the complaint is dismissed. Plaintiff is granted leave to

file an amended complaint as to Muller only upon pleading jurisdiction pursuant to the Illinois long-arm statute, Ill.Rev.Stat. ch. 110 § 2–209. Further, plaintiff has leave to re-plead Counts I or II against Muller and Financiere only upon alleging fraud with particularity pursuant to Fed.R.Civ.P. 9(b). Plaintiff has twenty days to file an amended complaint complying with this order. Count III is dismissed with prejudice.

---

**4.** Insofar as the complaint alleges a conspiracy, the court dismisses the claim. First, Siebengartner is not a party to this action. Second, conspiracy claims must be supported by specific

facts and cannot, as here, be merely conclusory. *See Maloney v. Washington*, 584 F.Supp. 1263, 1266 (N.D.Ill.1984).