SAVELAND, Appellant, vs. CONNORS and another, imp., Respondents.

*February 24—March 22, 1904.*

*Jurisdiction: Defendants fraudulently decoyed into state: Dismissal of action: Evidence: Frauds other than that in suit.*

1. Where plaintiff by fraud decoyed the defendants into this state for the purpose of bringing them within the jurisdiction of its courts, the action may, in discretion, be dismissed on that ground; and it is immaterial that plaintiff intended at first merely a criminal prosecution and not a civil action, or that, after service of process in the civil action, defendants entered appearances therein or otherwise submitted to the jurisdiction.
2. In an action to recover damages for fraud perpetrated in connection with a prize fight, defendants cannot properly be questioned, on cross-examination, as to their knowledge of, or connection with, other fraudulent sporting events.

APPEAL from an order of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

Appeal from an order setting aside the service upon the defendants and dismissing the action. It appeared that the plaintiff, in July, 1902, had bet money upon a prize fight in Springfield, Illinois, apparently with the understanding that by collusion between the participants the one upon whom he bet was to win, but that in fact the convention between them was the reverse of his understanding, whereby his champion lost the fight and plaintiff his money; that he considered de-

fendant *Connors,* who was stakeholder, as having been in the conspiracy to delude and defraud him; that in March, 1903, thereafter, he again visited Springfield, and had an interview with *Connors* about joining in drawing some Milwaukee acquaintance of plaintiff into a similar operation to their mutual benefit, and to the partial or complete reimbursement of the plaintiff. The witnesses differ as to who suggested this plan, but agree that it was then talked over,. and plaintiff admits that when it was suggested he thought he saw opportunity to get *Connors,* and perhaps some of his confederates, to Milwaukee, where he thought they might be dealt with in a less friendly spirit than that which shielded them in Springfield. Defendants claim that at that time plaintiff met defendant *McCarren,* and arranged to have him come to Milwaukee to endeavor to put the scheme in operation, though plaintiff denies this. However, late in March,. *McCarren,* who was a foot racer, and one Henderson, also a foot racer, did come to Milwaukee and call upon plaintiff, whose attorney then notified the police of their presence and purpose, and plaintiff engaged with them in an ostensible scheme to draw an acquaintance of his into betting considerable sums upon a proposed foot race between them, to be run at Rochester, New York. Plaintiff, however, desired to reach *Connors,* and therefore got into communication with him by telephone, and insisted on his coming to Milwaukee to aid to "skin up a sucker." *Connors* responded with celerity, and appeared the next forenoon. He, together with the other two Springfield men, were put in communication with plaintiff's friend, and opened up their plan of a collusive foot race to him, and were decoyed into the hands of the police, who held them, upon charges of vagrancy or otherwise, in jail, for some time. Immediately after their arrest, however, summons and complaint were served upon them in this action, seeking to recover damages for fraud perpetrated on the plaintiff in the Springfield transaction. They also were

later arrested upon civil process issued in this action.   The defendants entered appearances, served answers, and made certain motions consistent only with the existence of personal jurisdiction over them.   The court found that they had both been decoyed into this state for the purpose of obtaining service of process upon them in this action, and in the exercise of its discretion over its own process dismissed such service and the action.  From such order the plaintiff appeals.

For the appellant the cause was submitted on briefs by *Doerfler, McElroy & Eschweiler.*

For the respondents there was a brief by *Martin J. Gillen,* attorney, and *Leslie A. Gilmore,* of counsel, and oral argument by *Mr. Gilmore.*

Dodge, J.   1. The finding of the trial court to the effect that both *Connors* and *McCarren* were by plaintiff decoyed into this state for the purpose of bringing them within the jurisdiction of its courts by fraudulently holding out to them another and different purpose is supported by some affirmative evidence, and is not antagonized by that clear preponderance necessary to its reversal.   Upon the fact so found was aroused the power of the court, in its discretion, to refuse its jurisdiction to a case brought within it by trickery, to purge its docket of such a disgrace.   *Townsend v. Smith,* 47 Wis. 623, 3 N. W. 439; *Schræder v. Laubenheimer,* 50 Wis. 480, 7 N. W. 427; *Moletor v. Sinnen,* 76 Wis. 308, 44 N. W. 1099; *Williams v. Williams,* 117 Wis. 125, 94 N. W. 25; *Reed v. Williams,* 29 N. J. Law, 385; *Hill v. Goodrich,* 32 Conn. 588; *Wanzer v. Bright,* 52 Ill. 35.   In the last case it is said:

"The pure fountains of justice can never be so polluted. The courts were created for the administration of justice, and they and their process can never be used for the purpose of oppression and to perpetrate fraud and wrong, or their process fraudulently obtained and employed to enforce a right, however just and legal."

The power and duty of the courts to refuse jurisdiction
in such cases rest not so much on the rights of the defendant
as upon a duty to themselves to preserve the purity of judi-
cial proceedings. Though the defendants here be, as sug-
gested, of the vilest, is no reason that a court should lower
itself to the attitude of an accessory in working an effective
fraud upon them. It matters not that jurisdiction is in
fact acquired, whether by service of the summons or by acts
of the defendants in submission to such jurisdiction. *Town-
send v. Smith, supra.* Neither is it significant that the pur-
pose of plaintiff may not have included the commencement
of a civil action, but merely the institution of criminal pro-
ceedings. The service of process in this action was made pos-
sible only by the fraud, and the court should therefore deny
it effect. *Ibid.*

2. Error is assigned upon permitting defendants to refuse,
as possibly criminating, answers upon cross-examination as
to their knowledge of, or connection with, certain described
fraudulent sporting events; also as to their connection with
that in which plaintiff claimed to have been swindled. In
such ruling could be nothing of prejudice to appellant, for
such facts had no bearing or relevancy upon the only issue
presented by the motion to dismiss, namely, whether they
had been fraudulently induced by plaintiff to come into Wis-
consin. Further, all of the former class of questions were
improper under the rule of *Emery v. State,* 101 Wis. 627,
648, 78 N. W. 145, and *Paulson v. State,* 118 Wis. 89, 94
N. W. 771.

We are satisfied that the trial court rightly exercised its
discretion in setting aside the service of process and dismiss-
ing the action.

*By the Court.*—Order affirmed.