**K MART CORPORATION, Plaintiff,**

v.

**GEN-STAR INDUSTRIES COMPANY, LTD., Defendant.**

No. 85–CV–75441–DT.

United States District Court, E.D. Michigan, S.D.

April 30, 1986.

---

1. Judge Davis is now a Judge for the Fifth Circuit Court of Appeals.

Timothy Mucciante, Troy, Mich., for plaintiff.

Jeffrey Knuckles, Naperville, for defendant.

### ORDER

COHN, District Judge.

#### I.

This is a case for breach of contract, misrepresentation, and fraud. Plaintiff alleges that it contracted with defendant Gen-Star Industries Company, Ltd., a Taiwanese corporation, to purchase emergency roadside flashers for automobiles and that the flashers did not comply with federal law as required by the contract of sale, despite the fact that defendant Yang certified that the flashers would comply with federal regulations. As a result, plaintiff is now defending in a suit by the National Highway Traffic Safety Administration and has had to dispose of all the flashers it received. The complaint named as defendants Gen-Star, Yang, its managing director and the person who signed the certificates certifying the flashers, and Tien, Yang's personal translator in the United States.[1]

#### A.

Defendants have filed a motion styled "Motion to Dismiss Defendants." They allege as grounds lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2), and insufficiency of service of process, Fed.R.Civ.P. 12(b)(5), because of service during a settlement meeting. Pertinent cases have dealt with such a motion under either rule of procedure. *See Coyne v. Grupo Industarial Trieme, S.A.*, 105 F.R.D. 627 (D.D.C.1985) (addressing motion under Rule 12(b)(5)); *E/M Lubricants, Inc. v. Microfral, S.A. R.L.*, 91 F.R.D. 235 (N.D.Ill.1981) (addressing motion under Rule 12(b)(2)). A leading treatise concludes that the Rule 12(b)(2) motion is more appropriate but that the choice is immaterial to the outcome. 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1353, pp. 579–80 (1969).

I heard argument on the motion on February 24, 1986 at which I directed plaintiff to submit a supplemental memorandum describing the events leading to service of process and arguing why the case should not be dismissed under *Coyne, supra.* Because I conclude that service was improper, it is unnecessary to rule on defendants' grounds of failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).

#### B.

On October 9, 1985, counsel for defendants sent a letter to plaintiff's counsel with copies to Yang and plaintiff's President,

---

1. Subsequent discovery showed that Tien was not an agent of Gen-Star; plaintiff has filed a first amended complaint in which Tien is no longer named as a defendant.

**312**

M.G. Parsons. The letter indicated that Yang "desire[d] to come to the United States in order to discuss the situation in person with both yourself and Mr. Parsons. ... If an in-person meeting is agreeable, please advise me of dates...." Another of plaintiff's attorneys responded with a letter of October 17, 1985. It said, "We very much appreciate Gen-Star Industries' initiative to come and visit .... At your earliest convenience, please inform me of the date of your and Mr. Yang's visit." There is some indication that plaintiff made all the arrangements for a meeting at the world headquarters in Troy, Michigan, although plaintiff says that it merely accomodated Gen-Star and made several date changes at Gen-Star's request. The meeting was finally set for November 27, 1985. Defendants' letter of October 17 suggests that the sole purpose was to discuss settlement of the problem regarding the flashers, although Parsons says that Gen-Star planned to discuss other ongoing business at the meeting, and in fact Yang did engage in other business discussions with Parsons once he was at plaintiff's headquarters on November 27.

Parsons did not decide to prepare the instant complaint until November 14, after the meeting with Yang had been arranged. Parsons says that it was a genuine purpose of the meeting to attempt settlement and that plaintiff did not intend to serve the complaint until after it was clear that settlement would not occur. Parsons's affidavit, taken together with the events as they actually happened at the meeting, however, makes it equally clear that plaintiff's only planned efforts at settlement were to get Yang to sign a prepared indemnity agreement (Exhibit A to this opinion) or serve him the complaint. The complaint was filed in the clerk's office on November 26 and a professional process server was engaged.

The descriptions of the parties vary as to what actually happened at the November 27 meeting. One of plaintiff's attorneys says that the summons and complaint were not served on Yang until after settlement discussions. A more illuminating description comes from another of plaintiff's attorneys, who says that Yang (who cannot speak English) was first given the "Letter of Understanding" and only when he refused to sign it was the complaint served. Yang's translator says that the complaint was served almost immediately upon their arrival at Plaintiff's office, and after repeated questioning he still did not recall seeing the "Letter of Understanding" even when shown to him. There is no indication in the record that Yang was told at any time that he would be served if he did not sign the Letter of Understanding, even though Parsons admits he had formulated such an intent before Yang entered the United States.

## II.

The overwhelming majority of cases support the view, either expressly or by implication, that when a person has been induced by trickery to come within the jurisdiction of a court for the purpose of procuring service of process upon such person, the service will be set aside upon proper motion. *Commercial Mut. Acci. Co. v. Davis*, 213 U.S. 245, 29 S.Ct. 445, 53 L.Ed. 782 (1909); *Copas v. Anglo-American Provision Co.*, 73 Mich. 541, 41 N.W. 690 (1889); Annot., *Attack On Personal Service As Having Been Obtained By Fraud Or Trickery*, 98 A.L.R.2d 551, 556 (1964). The issue is what constitutes inducement by trickery such that service will be set aside. Whether or not the service upon Yang was effective to serve Gen-Star is irrelevant; a ruling based on deceptive service benefits Gen-Star as well.

### A.

Two recent cases are persuasive support for finding the service of process here improper. In *Coyne, supra*, an American financier sued a foreign corporation and its chief executive officer for breach of an agreement. The plaintiff repeatedly urged the chief executive officer ("CEO") by telephone to come to Washington, D.C. to settle their dispute. The plaintiff testified

that he warned the CEO that he was preparing a complaint and invited the CEO to a meeting on other business. To the contrary, the CEO testified that he was not warned that the plaintiff had decided to file suit and that he had traveled to Washington solely to settle the dispute. Other business was discussed. The CEO was handed a copy of the complaint "as a courtesy" and settlement discussions ensued. When the CEO declined to sign a settlement on the spot, the plaintiff served him the complaint.

The court ruled that it had the discretion not to exercise personal jurisdiction, so as to further the administration of justice. The court emphasized the importance of encouraging the orderly settlement of disputes, which would be impeded by upholding personal jurisdiction where a defendant who was not already in the jurisdiction entered primarily upon the plaintiff's instigation for settlement talks. The court did not find it dispositive that the defendant suggested details of the meeting, so long as the plaintiff agreed to a settlement meeting in the plaintiff's jurisdiction. Citing *Commercial Mutual Accident Company, supra,* the court said that service could be valid only if there was first a bona fide effort to settle immediately before service. The court also said that a clear rule requiring the plaintiff to warn defendant about possible service if he enters the jurisdiction eliminates the inevitable swearing match about who said what to whom.

In *E/M Lubricants, supra,* an American corporation, the plaintiff, became involved in a dispute with a foreign corporation, the defendant. The defendant's president sent a telex to the plaintiff's president for the purpose of arranging a meeting in the United States to discuss the dispute. The plaintiff's president replied by setting a date. Although the defendant's president intended to conduct other business in the United States, he traveled to meet the plaintiff's president for the sole purpose of conducting settlement negotiations. No meeting ever took place, as the defendant's president was served the night before the scheduled meeting. The court quashed service on the grounds that the plaintiff's agreement to discuss settlement was a substantial factor in convincing the defendant's officer to come into the jurisdiction.

■ Some courts have refused to set aside service because there was proof, such as correspondence from the defendant to the plaintiff, that the defendant came to the jurisdiction for purposes of settlement on his own motion. *See Tope v. Beal,* 98 F.2d 548 (3d Cir.1938); *Oden Optical Co. v. Optique Du Mond, Ltd.,* 268 Ark. 1105, 598 S.W.2d 456 (App.1980). In *Oden* the plaintiff actively discouraged the meeting and there was some evidence that the defendant had not authority or intent to settle. The facts in *Tope* are not developed, so it is impossible to make a comparison with the present situation.

There is no need, however, to discern fine factual differences between the cases. The better rule, *see Coyne; E/M Lubricants; Western States Refining Co. v. Berry,* 6 Utah 2d 336, 313 P.2d 480 (1957), is a flat prohibition on service in such cases unless the plaintiff *warns* the defendant before he enters the jurisdiction that he may subject himself to process, or else when settlement talks fail the plaintiff must give the defendant *an opportunity to leave the jurisdiction* before service is made. Such a rule avoids inherently difficult determinations as to who initiated meetings, who relied on statements made by whom, and whether the plaintiff engaged in good faith settlement. Such a bright-line rule promotes good faith settlement, is efficient from a judicial standpoint, and serves to distance the courts from the possibility of trickery.

A bright-line rule also obviates a determination of whether the plaintiff intended to file a complaint at the time the parties were arranging the settlement meeting. In *Allen v. Wharton,* 59 Hun. 622, 13 N.Y.S. 38 (N.Y.Sup.1891), discussed in Annot., *supra,* at 578, the plaintiff determined to bring suit against the defendant if settlement was not reached only after he learned that the defendant would come into

the jurisdiction. Nevertheless, the court said good faith on the part of the plaintiff required permitting the defendant to leave the jurisdiction without making service of the summons when it became evident that no settlement would be effected, and service constituted a breach of the confidence which had been inspired by the preceding correspondence between the parties. The same conclusion was reached in *Miami Powder Co. v. Griswold*, 5 Dec. Reprint 532 (Ohio 1878), discussed in Annot., *supra*, at 579.

■ Some cases have held that, where the defendant comes into the jurisdiction to attend a proper business meeting and service is secondary to that purpose, service is proper. *See National Paper Corp. v. Scheck*, 47 Lack.Jur. 189 (Pa.1946), discussed in Annot., *supra*, at 568; *Iams v. Tedlock*, 110 Kan. 510, 204 P. 537 (1922). Other cases have concluded that where one purpose of the defendant's coming into the jurisdiction is to discuss further business with the plaintiff, this does not allow service of process so long as the plaintiff fails to tell the defendant that a purpose of the meeting is to serve him with process. *See e.g., Harbison-Walker Refractories Co. v. Fredericks*, 12 Pa.Dist. 419 (1903), discussed in Annot., *supra*, at 565; *Van Horn v. Great Western Mfg. Co.*, 15 P. 562 (Kan. 1887). The better rule is found in these latter cases, along with *Coyne*, because it "avoid[s] ... the unpleasant and often impossible task of judging the inevitable swearing matches about who said what to whom." *Coyne*, 105 F.R.D. at 630.

Even if the court were not to adopt a bright-line rule, a bona fide effort to settle would seem to be required by the Supreme Court's opinion in *Commercial Mutual Accident Company*. Although the Supreme Court did not discuss the facts that led to a finding of good faith there, certainly where the defendant comes into the jurisdiction for the avowed purpose of discussing settlement, and has a professional process server serve a summons and complaint upon the defendant only a few minutes after defendant's arrival at plaintiff's office, ser-

vice should be set aside. *See Fischer v. Munsey Trust Co.*, 44 D.C.App. 212 (1915), discussed in Annot., *supra*, at 576.

### B.

■ Plaintiff attempts to distinguish *Coyne* in its supplemental memorandum filed March 14, 1986. *Coyne* is not distinguishable; the facts here are so similar as to compel the same outcome. There was, simply, no warning given to Yang that plaintiff contemplated service of process, either before he entered the jurisdiction or after what can only charitably be called the "settlement discussion." Although Yang appears to have initiated the November 27, 1985 meeting by his counsel's letter, there was substantial participation by plaintiff in arranging the meeting and certainly no discouragement of such a meeting. It is clear that plaintiff's willingness to meet with Yang with regard to the flashers problem was a significant factor in bringing him to Troy, which he planned to visit only on his way to Washington, D.C. for discussions with the Department of Justice regarding the flashers case against plaintiff. He clearly was not in the jurisdiction for other business unrelated to the settlement meeting. That other business may have been discussed at the November 27 meeting is not probative, since the rule in *Coyne* obviates any such inquiry into intents and purposes. For the same reason, it is also irrelevant that plaintiff may not have begun to prepare the complaint until after Yang had offered to come to Michigan. Courts are ill equipped to assess such claims. *See E/M Lubricants*, 91 F.R.D. at 238. Certainly plaintiff had formulated such an intent and drafted the complaint before Yang arrived and, thus, should have informed Yang that service was a possible outcome of their meeting. *Id.* at 237–38. Even if service was not the sole purpose of the meeting and plaintiff intended to pursue settlement, it should have given Yang an opportunity to leave the jurisdiction once the settlement process broke down. *Id.*

Finally, there was clearly no bona fide attempt to settle the dispute on behalf of plaintiff. First, the "Letter of Understanding" was admittedly no more than an attempt by plaintiff to reaffirm its rights under the original contract. It did not settle anything. Nor would it have put a stop to litigation. The letter sought a designation of Gen-Star's and Yang's counsel as agent for purposes of service of process in the United States, from which one must conclude that litigation would have proceeded even if Yang had signed the letter. Second, even if the letter can be characterized as a settlement agreement, albeit a lopsided one, there is no evidence that Yang understood it to be such or was given an opportunity to understand it. His interpreter does not recall having seen the letter and certainly did not read it to Yang. It was indeed a rather bizarre settlement conference, where one side attempted to force a signature from a party who could not even converse in the language of the document. Third, Tien's detailed account of the morning of November 27 demonstrates the rapidity with which the complaint and summons were served. When the defendants were offered coffee, the complaint arrived not even contemporaneously but before the coffee. Considering the evidence offered, these events cannot fairly be described as a bona fide effort to settle the flashers dispute.

As the court in *E/M Lubricants* noted, "[I]t is in the interest of justice to promote the speedy and amicable resolution of disputes as an alternative to legal battle. Conduct such as that engaged in by plaintiff in this case does not further that interest." 91 F.R.D. at 238. In this case, the conduct of plaintiff is not befitting of its role as one of America's leading retailers.[2]

### III.

A leading treatise suggests that the choice between quashing service and dismissing the complaint depends upon whether the plaintiff is likely to be able to effectuate proper service by another means. *Federal Practice and Procedure* § 1354. The only difference is that, where service is quashed, the complaint remains and the plaintiff need only serve the defendants properly; where the complaint is dismissed, the plaintiff must both refile and serve again. The courts in both *Coyne* and *E/M Lubricants* quashed service and dismissed the complaint without addressing any issue other than the fraudulent service. To avoid a discussion of other means by which plaintiff may serve defendants, the appropriate order is dismissal of the complaint. This case is DISMISSED.

SO ORDERED.

EXHIBIT A

**K MART ENTERPRISES**

A DIVISION OF K MART CORPORATION

INTERNATIONAL HEADQUARTERS

3100 WEST BIG BEAVER ROAD

TROY, MICHIGAN 48084

M G. PARSONS
PRESIDENT

November 20, 1985

Mr. Darku M. Yang
Managing Director
Gen-Star Industries Co., Ltd.
P.O. Box 82-27
Taipei, Taiwan

---

**2.** This is not the first time that plaintiff has litigated in this court over business in Southeast Asia. *See K Mart Corp. v. Knitjoy Mfg., Inc.,* 542 F.Supp. 1189 (E.D.Mich.1982); *K Mart Corp. v. Knitjoy Mfg., Inc.,* 534 F.Supp. 153 (E.D.Mich. 1981).

316

Dear Mr. Yang.

Thank you for taking the initiative to meet with me and my associates here at K mart International Headquarters.

As you know, we are currently defending a federal government lawsuit brought by the Department of Transportation concerning your No. 551 and 552 automotive flashers which K mart purchased from Gen-Star.

As a trusted importer and vendor who continues to do export business with K mart, we look to Gen-Star to pay or reimburse fully the penalty, either as settled or adjudicated, imposed against K mart arising from the importation and sale of the No. 551 and 552 flashers purchased from Gen-Star. The Import Order Terms and Conditions so provided (copy attached).

Also, Gen-Star should formally at this time appoint Zachary Bravos, Esq. of Wheaton, Illinois as its agent for acceptance of service of any legal process on behalf of Gen-Star in the United States.

Your signature below indicates your concurrence.

Yours very truly,

M. G. Parsons
President, K mart Enterprises

MGP:nlt
Attachment

ACKNOWLEDGED AND AGREED: _____

Darku Yang, Managing Director
Gen-Star Industries Co., Ltd.