MANITOWOC WESTERN COMPANY, INC., Plaintiff-Respondent-Cross-Appellant,

v.

Allan MONTONEN, Defendant-Third-Party Plaintiff-Appellant-Cross-Respondent-Petitioner,

v.

MANITEX, INC., The Manitowoc Company, Inc., Fred Butler, Robert R. Friedl, and Does 1 through 20, inclusive, Third-Party Defendants-Respondents-Cross-Appellants.

Supreme Court

*No. 00–0420. Oral argument January 10, 2002.—Decided February 27, 2002.*

2002 WI 21

(Also reported in 639 N.W.2d 726.)

452

For the defendant-third-party plaintiff-appellant-cross-respondent-petitioner there were briefs by *John J. Prentice, Andrew T. Phillips* and *Prentice & Phillips,* Milwaukee, and oral argument by *Andrew T. Phillips.*

For plaintiff-respondent-cross-appellant and third-party defendants-respondents-cross-appellants there was a brief by *Richard C. Ninneman, Brian D. Winters* and *Quarles & Brady LLP,* Milwaukee, and oral argument by *Richard C. Ninneman.*

¶ 1. ANN WALSH BRADLEY, J. The petitioner, Allan Montonen, seeks review of an unpublished court of appeals decision affirming a circuit court grant of summary judgment in favor of the respondent, Manitowoc Western Company.[1] Montonen asserts that this court should extend the fraud exception to the transient rule of personal jurisdiction in order to prohibit service of a lawsuit on a person who comes to Wisconsin for settlement negotiations. Because we conclude that the public policies at stake are best served by the fraud exception as it presently stands, we decline to extend the exception as Montonen asks. Accordingly, we affirm the court of appeals.

---

[1] *See Manitowoc Western Co. v. Montonen,* No. 00–0420, unpublished slip op. (Wis. Ct. App. April 25, 2001) (affirming a judgment of the circuit court for Manitowoc County, Darryl W. Deets, Judge).

¶ 2. The pleadings and affidavits set forth the following facts. Manitowoc Western Company is a Wisconsin corporation that employed Montonen, a California resident, in its Benicia, California facility. In October 1994, Manitowoc Western sent a letter to Montonen outlining proposed terms for Manitowoc Western's sale of its Benicia Boom Truck Crane Dealership to Montonen. Manitowoc Western believed the letter to be a non-binding general expression of intent, but Montonen maintained that the letter was a binding and enforceable agreement.

¶ 3. Although the parties dispute many of the details surrounding events subsequent to the signing of the October letter, the following three facts are undisputed. First, Montonen came to Wisconsin with his attorney on April 30, 1996, to meet with representatives of Manitowoc Western to discuss their disagreement over the letter. Second, Manitowoc Western filed this lawsuit against Montonen in Wisconsin earlier that day. Third, Manitowoc Western served Montonen with process at the end of the meeting.

¶ 4. Montonen moved to set aside the service of process and asked the circuit court to declare that it lacked jurisdiction over his person. He argued that Manitowoc Western engaged in fraud and deceit by tricking or enticing him to come to Wisconsin for settlement negotiations, then subsequently serving him with process. The circuit court denied Montonen's motion and eventually granted summary judgment in favor of Manitowoc Western.

¶ 5. In the court of appeals, Montonen argued that the court should adopt a rule forbidding service of process on a person who comes to Wisconsin for settle-

ment discussions. The court of appeals acknowledged that some jurisdictions follow the rule Montonen proposed. However, the court explained, such a rule would represent a "wholesale change in the law of personal jurisdiction" in Wisconsin. Whether such a change was warranted, the court concluded, was for this court to decide. Accordingly, the court of appeals declined to adopt Montonen's rule and affirmed the circuit court.

## II

¶ 6. Montonen renews his request in this court. He asks that we expand or interpret broadly the fraud exception to the transient rule of personal jurisdiction to prohibit service of a lawsuit on a person who comes to Wisconsin for settlement negotiations. Whether to expand the fraud exception to the transient rule of personal jurisdiction presents a question of law subject to independent appellate review. *See P.C. v. C.C.,* 161 Wis. 2d 277, 299, 468 N.W.2d 190 (1991).

¶ 7. In addressing the question before us, we briefly summarize the law of personal jurisdiction relevant to this case, then turn to examine the expanded versions of the fraud exception that Montonen advances. After examining these rules in light of the public policies at stake, we reject the proffered rules as unnecessary to effectuate these policies and conclude that Montonen has provided no compelling reason to extend the fraud exception as he requests. Instead, we reaffirm the fraud exception in its current form.

## III

¶ 8. We begin with a brief recitation of the relevant law of personal jurisdiction. Under Wisconsin's

long-arm statute, a court has jurisdiction over an individual who is a natural person served with process while voluntarily present within this state. Wis. Stat. § 801.05(1)(a) (1995–96)[2]; *see also Oxmans' Erwin Meat Co. v. Blacketer,* 86 Wis. 2d 683, 687, 273 N.W.2d 285 (1979) (discussing the statute).[3] Physical presence is, in fact, the traditional basis of personal jurisdiction. *Burnham v. Superior Court,* 495 U.S. 604, 612 (1990); *Oxmans' Erwin,* 86 Wis. 2d at 687. Personal jurisdiction based only on physical presence within a state at the

---

[2] Wisconsin Stat. § 801.05(1)(a) provides:

> A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances:

> (1) LOCAL PRESENCE OR STATUS. In an action whether arising within or without this state, against a defendant who when the action is commenced:

> (a) Is a natural person present within this state when served ....

All subsequent references to the Wisconsin Statutes are to the 1995–96 version unless otherwise indicated.

[3] This court in *Oxmans' Erwin Meat Co. v. Blacketer,* 86 Wis. 2d 683, 688 n.4, 273 N.W.2d 285 (1979), did not need to decide whether Wis. Stat. § 801.05(1)(a)'s provision for transient jurisdiction was constitutional because it resolved the case under the due process "minimum contacts" framework of *International Shoe Co. v. Washington,* 326 U.S. 310 (1945). At the time of *Oxmans' Erwin,* the question of whether the "minimum contacts" limitation on the constitutionality of personal jurisdiction also applied to a transient defendant through a long-arm statute such as § 801.05 was unresolved. *See* 86 Wis. 2d at 688. However, the Supreme Court in *Burnham v. Superior Court,* 495 U.S. 604 (1990), decided that question. The Court concluded that voluntary physical presence at the time of service is sufficient to satisfy due process for purposes of personal jurisdiction. *Id.* at 619, 628–29.

time of service has been referred to alternatively as "transient jurisdiction" or the "transient rule" of personal jurisdiction. *Burnham,* 495 U.S. at 629 n.1 (Brennan, J., concurring); *Oxmans' Erwin,* 86 Wis. 2d at 687 nn.2–3.

¶ 9. Of course, courts may achieve personal jurisdiction over an individual on a basis other than physical presence within the state at the time of service. *See, e.g., Schlosser v. Allis-Chalmers Corp.,* 86 Wis. 2d 226, 241, 271 N.W.2d 879 (1978) (citing *International Shoe Co. v. Washington,* 326 U.S. 310 (1945)). In this case, however, we address personal jurisdiction and service only under the transient rule.

¶ 10. The transient rule is not without exception. Where an individual is brought within a jurisdiction by fraud or trickery, service will be set aside upon the proper showing.

> If a person is induced by false representations to come within the jurisdiction of a court for the purpose of obtaining service of process upon him . . . it is an abuse of legal process, and, the fraud being shown, the court will, on motion, set aside the service.

*Townsend v. Smith,* 47 Wis. 623, 626, 3 N.W. 439 (1879); *see also Saveland v. Connors,* 121 Wis. 28, 31, 98 N.W. 933 (1904).

¶ 11. Montonen has consistently and forthrightly acknowledged that his position represents an expansion of the fraud exception to the transient rule. He concedes that he is unable to show actual fraudulent intent and thus does not fall within the fraud exception as it stands under *Townsend* and *Saveland.* Rather, he em-

458

phasizes the vintage of the two cases and asserts that it is time for the exception to expand and evolve.

¶ 12. Citing cases from other jurisdictions, Montonen asks that we extend the fraud exception by adopting a flat prohibition on service under the transient rule during settlement negotiations. In support of this rule, Montonen relies primarily on *E/M Lubricants, Inc. v. Microfral,* 91 F.R.D. 235 (N.D. Ill. 1981), and *K Mart Corp. v. Gen-Star Indus. Co.,* 110 F.R.D. 310 (E.D. Mich. 1986).

¶ 13. The federal district court in *E/M Lubricants,* 91 F.R.D. at 238, determined that the fraud exception should be extended to cover cases where a defendant "reasonably relies on plaintiff's agreement to discuss settlement and where, later, plaintiff, without notice to defendant, decides to sue." In such cases, the court explained, the duty is on the plaintiff to either (1) communicate to the defendant before the defendant enters the jurisdiction that pre-suit negotiations are no longer feasible or that the plaintiff has chosen a legal remedy, or (2) forego service on the defendant if the defendant is in the jurisdiction for the exclusive purpose of discussing settlement. *Id.*

¶ 14. Likewise, in *K Mart,* 110 F.R.D. at 313, the district court concluded that service was prohibited during settlement talks unless the plaintiff either (1) warns the defendant before entering the jurisdiction that it may be subject to service, or (2) gives the defendant an opportunity to leave the jurisdiction after settlement talks fail. The court in *K Mart* characterized its standard as a "bright-line" rule that would eliminate "a determination of whether the plaintiff intended to file a complaint at the time the parties were arranging the settlement meeting." *Id.*

459

¶ 15. As an alternative, Montonen asserts that this court could expand the fraud exception to require the quashing of service when a plaintiff invites a defendant into Wisconsin for purposes of settlement talks and fails to inform the defendant of the possibility of service. Among other cases, he cites to *Coyne v. Grupo Indus. Trieme,* 105 F.R.D. 627 (D.D.C. 1985), and *Henkel Corp. v. Degremont,* 136 F.R.D. 88 (E.D. Pa. 1991), in support of this rule.

¶ 16. In *Coyne,* the district court applied the fraud exception and recognized a presumption of fraud, given certain facts. In essence, the court adopted an "invitation rule" that establishes an evidentiary presumption of fraud when a plaintiff invites a defendant into the plaintiff's jurisdiction to discuss settlement and then effects service. *Coyne,* 105 F.R.D. at 630.

¶ 17. Similarly, the district court in *Henkel,* relying on *Coyne,* concluded that service should be quashed "whenever a defendant enters a jurisdiction for settlement talks at the plaintiff's suggestion and the plaintiff has not clearly and unequivocally informed the defendant of the possibility of service should the settlement negotiations fail." *Henkel,* 136 F.R.D. at 96. Thus, the focus of the test under *Coyne* and *Henkel* is the plaintiff's role in initiating the settlement meeting in the plaintiff's jurisdiction and subsequently serving the defendant without forewarning.

¶ 18. Although the standards set forth under either approach have much in common, it is apparent that they are not the same. As we read the cases, the essential difference between the two is that under *Coyne* and *Henkel,* the plaintiff must have initiated the settlement meeting while *E/M Lubricants* and *K Mart*

purport to apply a "bright-line" rule that makes irrelevant the inquiry into which party initiated the meeting.

¶ 19. Other cases Montonen cites illustrate further variations on the theme. *See TMF Tool Co. v. H.M. Financiere & Holding,* 689 F. Supp. 820 (N.D. Ill. 1988); *Commercial Bank & Trust Co. v. District Court,* 605 P.2d 1323 (Okla. 1980); *Western States Refining Co. v. Berry,* 313 P.2d 480 (Utah 1957). In *Western States,* for example, the Utah Supreme Court determined that a showing of actual fraudulent intent was unnecessary where the following conditions were met: (1) the plaintiff "extends an invitation" to the defendant to enter the jurisdiction for purposes of settlement; (2) the defendant was in the jurisdiction for the "sole purpose" of discussing settlement; (3) service was effected either during settlement negotiations or during a "reasonable period" involved in coming to the negotiations and returning therefrom; and (4) the plaintiff did not advise the defendant at the time of the invitation that the defendant would be served if settlement negotiations failed. 313 P.2d at 481–82.

¶ 20. In *TMF Tool,* the district court adopted a rule similar to that in *E/M Lubricants* and *K Mart,* but framed it as a three-prong test. The court in *TMF Tool* determined that service may be quashed on a transient defendant when (1) the parties agreed to have a settlement discussion; (2) the defendant entered the jurisdiction "only for that purpose;" and (3) the plaintiff failed to notify the defendant, before the defendant arrived, that it might be served. 689 F. Supp. at 823.[4]

---

[4] On appeal in the *TMF Tool* litigation, the Seventh Circuit Court of Appeals noted that there was no controlling law of the

¶ 21. The courts in the cases cited gave a variety of reasons for adopting their respective rules. Most of these reasons, however, may be distilled into two important public policy considerations.

¶ 22. First, the courts relied on the public policy of the promotion and encouragement of settlement negotiations. *See Henkel,* 136 F.R.D. at 95; *K Mart,* 110 F.R.D. at 313; *Coyne,* 105 F.R.D. at 630; *E/M Lubricants,* 91 F.R.D. at 238; *Commercial Bank,* 605 P.2d at 1325. Second, the courts sought to avoid thorny factual inquiries, particularly where such inquiries amount to nothing more than "swearing matches about who said what to whom." *Henkel,* 136 F.R.D. at 94 (quoting *Coyne,* 105 F.R.D. at 630); *see also K Mart,* 110 F.R.D. at 313; *E/M Lubricants,* 91 F.R.D. at 238. Montonen echoes these considerations in his assertions, arguing that an extension of the fraud exception is necessary to promote these important public policies in Wisconsin.

¶ 23. We agree that encouraging the efficient resolution of disputes through settlement negotiations and avoiding factual inquiries that are certain to devolve into swearing matches are important public policy considerations. These public policy goals may, upon initial examination, appear to justify rules like the ones Montonen advances. Ultimately, however, we are not convinced that they are best achieved by an expansion of Wisconsin's fraud exception to the transient rule.

¶ 24. The rules as advanced by Montonen create at least as many factual inquiries as they eliminate. This is true even of the rule that Montonen, citing *K Mart,* characterizes as a bright-line rule. That rule leaves questions such as the following ripe for conten-

circuit on the fraud exception. *See TMF Tool Co. v. Muller,* 913 F.2d 1185, 1191 (7th Cir. 1990).

tion: What constitutes a settlement negotiation? Was the served party in the jurisdiction for the sole purpose of those negotiations? What happens if it is the primary purpose but not the sole purpose? When does one purpose end and another begin?

¶ 25. Under other variations of the rules, such as those adopted in *Coyne* or *Western States,* still further factual inquiries are added to the mix: Did the plaintiff "invite" or "suggest" the settlement negotiations? In any given case, what is a "reasonable period" of time before and after a settlement negotiation in which a person may expect to remain immune from service?

¶ 26. Indeed, the disputes that would arise from these types of questions are foreshadowed by the facts in this case. For example, Montonen asserts that Manitowoc Western "invited" him to Wisconsin although Manitowoc Western argues that it was Montonen who requested the meeting. Manitowoc Western also argues that the meeting in Wisconsin may not have constituted a "settlement discussion," yet Montonen maintains that it is beyond dispute that the purpose of the meeting was to "discuss settlement." Both parties submitted affidavits in support of their positions, each with competing versions of the facts.

¶ 27. In addition, we note that although Montonen helpfully has attempted to categorize cases expanding the fraud exception into essentially two rules, there is substantial variation among the cases cited as to the exact bounds of the rules. This further illustrates that an expanded fraud exception provides no more of a bright-line standard than does the fraud exception as it now exists.

¶ 28. We do not agree with Montonen that the fraud exception in its present form significantly discourages settlement negotiations, thus undermining

the efficient resolution of disputes through settlement negotiations. Parties who wish to engage in face-to-face settlement negotiations without risking service are not without alternatives. As technologies such as internet video conferencing become increasingly commonplace, the benefits of face-to-face settlement negotiations may be realized without an in-person meeting.

¶ 29. Perhaps more significantly, parties may agree ahead of time that they will not attempt service during the settlement negotiations. Thus, a party who is fearful of service can be protected by simply insisting on a clear statement from the other party that service will not be attempted. At oral argument, Manitowoc Western conceded that service in violation of such a safe harbor agreement would fall within the traditional fraud exception as it is presently formulated under *Saveland* and *Townsend*.

¶ 30. The rules that Montonen advances also fail to account for another important public policy that provides a compelling reason to retain the present fraud exception's relatively narrow formulation. Wisconsin has a definite interest in providing a forum where its citizens may seek legal redress. *Clement v. United Cerebral Palsy of S.E. Wisconsin, Inc.*, 87 Wis. 2d 327, 338, 274 N.W.2d 688 (1979); *Nagel v. Crain Cutter Co.*, 50 Wis. 2d 638, 649, 184 N.W.2d 876 (1971). Expanding immunity from service of process to cover parties in settlement negotiations may limit and obfuscate the availability of a Wisconsin forum for Wisconsin litigants. As the dissenting justice in *Western States* noted in criticizing Utah's version of the rule:

> This [rule] opens the door to the unscrupulous nonresident present in the state, who, on being served

by a resident, need only conveniently to state that he is present in the state at the invitation of the plaintiff for the purpose of settling a claim, thus inoculating himself . . . . Before such immunity should be granted, there should be a finding of an allurement, enticement, trickery, fraud, legal or otherwise, or some other kind of bad faith on the part of him, who did the inviting to negotiate, as the great weight of authority requires.

313 P.2d at 482–83 (Henriod, J., dissenting).

¶ 31. We agree with the dissent in *Western States* that the better rule is to continue to require a showing of actual fraud when a party seeks to set aside service under the fraud exception to the transient rule. Montonen has failed to provide a compelling reason why this court should depart from the rule of *Saveland* and *Townsend*.

¶ 32. In sum, Montonen asks that this court extend the fraud exception to the transient rule of personal jurisdiction in order to prohibit service of a lawsuit on a person who comes to Wisconsin to engage in settlement negotiations. We decline to do so. The public policies at stake do not warrant an expansion of that exception. Rather, the public policies are best served by the fraud exception as it presently stands. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.