# COURT OF APPEALS
## DECISION
## DATED AND FILED

## May 21, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2136**

Cir. Ct. No. **2024SC57**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

SHIHHAN CHOU,

    PLAINTIFF-RESPONDENT,

  V.

STEPHEN V. MIKUS,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Vernon County: TIMOTHY J. GASKELL, Judge. *Affirmed*.

¶1 BLANCHARD, J.[1] Stephen Mikus, pro se, appeals a money judgment issued by the circuit court in favor of Shihhan Chou, following a trial

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

conducted using small claims procedures. The judgment is in the amount of money that Chou claims Mikus owes her. At trial, Chou presented evidence in the form of emails exchanged between the two of them showing that Mikus used Chou's credit card to pay for both his own expenses and their shared expenses, which included rent, food, plane flights, and other travel expenses.

¶2 Mikus does not dispute that the email exchanges reflect a record of relevant transactions. Instead, Mikus argues that: (1) the circuit court lacked personal jurisdiction over Mikus; (2) the court improperly admitted unauthenticated evidence; (3) there was not an enforceable contract between Mikus and Chou; (4) the court erred by failing to conduct a line-by-line review of the evidence of alleged debts; and (5) the court improperly dismissed Mikus's counterclaim for $5,000. I affirm because Mikus fails to show that the circuit court erred in any of these ways.

## BACKGROUND

¶3 In March 2024, Chou commenced this action in small claims court seeking a judgment against Mikus in the amount of $6,448.75. Mikus brought a counterclaim for a $5,000 judgment based on professional services that he allegedly rendered to Chou related to filing a tax return and divorce proceedings that she had been involved in, against another person who is not a party to this case.

¶4 The following summarizes pertinent trial evidence.

¶5 Beginning at some point in 2020, and lasting through June of 2023, Chou and Mikus were in a domestic relationship. During the relationship, and in at least some instances afterward, Mikus used Chou's credit card to pay for some

of his own personal expenses and for expenses shared by the parties. In order to keep track of what was spent, and by whom, Chou and Mikus maintained a chain of emails that they both regularly updated. Chou sought admission of the email chain as an exhibit, which the circuit court admitted. The email chain reflected a running tally that the two kept of the net amounts that Mikus owed to Chou for his personal expenses and one-half of their shared expenses. The unpaid amount owed as of January 2024, as reflected in an email from Chou to Mikus, showed that Mikus owed Chou $6,448.75.

¶6      At trial, Chou testified, but Mikus did not. Mikus cross examined Chou, and he submitted exhibits regarding particular expenses during the course of cross examination.

¶7      The circuit court determined that Chou's claim for $6,448.75 is supported by the email chain exhibit and by Chou's testimony, which Mikus did not dispute during trial. That is, the court found that the emails accurately established what Mikus owed Chou in January 2024, at the end of their relevant transactions and communications. The court dismissed Mikus's counterclaim, based on a determination that Chou did not understand, and that she acted reasonably in not understanding, that Mikus expected to be paid for whatever services he provided. Mikus appeals.

## DISCUSSION

**Personal Jurisdiction**

¶8      Mikus argues that the circuit court lacked personal jurisdiction over him because the facts of the case are insufficiently tied to Wisconsin, because he did not live in Wisconsin during his relationship with Chou, and because most of

the debts that he incurred involved transactions in Mexico and Illinois. But it is fatal to this argument that Mikus does not address the fact that he was in Wisconsin when he was served in this case.

¶9     Whether there is personal jurisdiction under pertinent statutory authority as applied to a set of facts presents an issue of law that this court reviews independently. *See Rasmussen v. General Motors Corp.*, 2011 WI 52, ¶14, 335 Wis. 2d 1, 803 N.W.2d 623.

¶10     WISCONSIN STAT. § 801.05 outlines the methods by which a circuit court may obtain personal jurisdiction over a defendant. One method of establishing that a circuit court has jurisdiction over a person is the following: "[i]n any action whether arising within or without this state, against a defendant who[,] when the action is commenced," "[i]s a natural person present within this state when served." § 801.05(intro.), (1), and (1)(a). Using this method to establish personal jurisdiction is constitutional. *See Burnham v. Superior Ct. of Cal.*, 495 U.S. 604, 619 (1990); *Manitowoc W. Co. v. Montonen*, 2002 WI 21, ¶8 n.3, 250 Wis. 2d 452, 639 N.W.2d 726.

¶11     The record includes a sheriff's certificate of service showing that Mikus was personally served in Viroqua, Wisconsin. Mikus fails to address this certificate. Accordingly, he does not show that there was a defect in the establishment of personal jurisdiction under WIS. STAT. § 801.05(1)(a).

**Admissibility of Trial Exhibits**

¶12     Mikus argues that the circuit court erred by admitting into evidence the trial exhibits reflecting the email chain containing the running tally of the amount Mikus owed Chou because the exhibits lacked authentication. This

argument fails because Mikus forfeited an authentication objection by failing to raise one in the circuit court.

¶13     In general, this court will not address an argument that the appellant failed to raise in the circuit court in a timely and developed manner.  *See **State v Counihan***, 2020 WI 12, ¶25, 390 Wis. 2d 172, 938 N.W.2d 530 (forfeiture is the failure to timely assert a right and can include failure to timely object to an alleged error in the circuit court).  Here, the circuit court asked Mikus if he had any objections to the introduction of the emails as trial exhibits, and in all but one instance he responded that he did not.  The only time Mikus might have intended to raise an objection to an exhibit at trial does not involve an argument regarding authentication.

**Existence of Enforceable Contract**

¶14     Mikus argues that the circuit court erred in determining that the email thread identified by Chou at trial constituted an enforceable contract.  At times, Mikus more specifically argues that the emails do not support "the essential elements" of contract formation, namely an offer, acceptance, and consideration.  On a closely related point, Mikus also emphasizes the absence of an explicit agreed schedule specifying when he would repay Chou and in what amount or amounts.  He argues that the omission of such a schedule rendered any agreement for repayment unenforceable.  Mikus does not develop either of these points by applying pertinent legal principles, supported by applicable authority, to facts in the record, and I reject his contract-based arguments for that reason.  *See **State v. Jackson***, 229 Wis. 2d 328, 337, 600 N.W.2d 39 (Ct. App. 1999) ("A party must do more than simply toss a bunch of concepts into the air with the hope that either

the trial court or the opposing party will arrange them into viable and fact-supported legal theories.").

¶15     Explaining further, and beginning with whether the email thread constituted a contract, "[a] valid contract [in Wisconsin] requires an offer, acceptance[,] and consideration." *Piaskoski & Assocs. v. Ricciardi*, 2004 WI App 152, ¶7, 275 Wis. 2d 650, 686 N.W.2d 675.  "Offer and acceptance exist when the parties mutually express assent, and consideration exists if the parties manifest an intent to be bound to the contract."  *Id.*  Significantly here, "[w]hether the parties assented and exchanged consideration are factual questions," and this court will uphold the circuit court's findings of fact "on these matters unless its findings are 'clearly erroneous.'"  *Id.* (quoting WIS. STAT. § 805.17(2)).

¶16     Mikus asserts that there was no evidence to support a finding that the parties intended to make the running tally that is reflected in the email chain an enforceable debt.  But in making this assertion, he does not address the circuit court's findings, which would be a necessary first step in developing an argument that the court clearly erred regarding this or any other element of contract formation.  Instead, Mikus asserts that the emails reflected an unenforceable understanding that was, in his words, merely "romantic and discretionary" or "informal or affectionate," as opposed to an enforceable contract.  As purported legal authority in support of this assertion, he cites to an opinion discussing divorce principles, *Rosplock v. Rosplock*, 217 Wis. 2d 22, 577 N.W.2d 32 (Ct. App. 1998), but without a pinpoint citation or any discussion of any point made in the opinion.  *See id.* (stating that circuit court was obligated to construe the unambiguous terms of the parties' stipulation and judgment of divorce regarding ex-wife's income in determining maintenance payments, and also stating that ex-wife's additional sources of post-divorce income did not represent a substantial

change of circumstances warranting maintenance modification). Accordingly, I reject this aspect of his argument based on a lack of development.

¶17 Turning to Mikus's other contract argument, he apparently means to argue that the parties did not agree to a specific time for him to pay Chou back, and that such a temporal component was an "essential term" for any agreement. *See Herder Hallmark Consultants, Inc. v. Regnier Consulting Grp., Inc.*, 2004 WI App 134, ¶¶7-8, 275 Wis. 2d 349, 685 N.W.2d 564 ("ordinarily a contract must be definite and certain" as to its "essential" or "basic" terms in order to be enforceable). However, Mikus does not identify or attempt to apply any pertinent legal authority for the proposition that an explicit schedule or deadline for repayment was an "essential" term on facts resembling those here, in the sense that no enforceable contract could exist without it.

¶18 Further, Wisconsin courts can imply a reasonable time for performance to avoid "a contract of indefinite duration." *See Farley v. Salow*, 67 Wis. 2d 393, 402-03, 227 N.W.2d 76 (1975). And, regarding indefiniteness of certain contract terms more generally, courts may consider the conduct of the parties and the surrounding circumstances to determine whether there is a shared understanding regarding an implied term of the contract. *Herder*, 275 Wis. 2d 349, ¶8 ("'If parties evidently intended to enter a contract, the trier of fact should not frustrate their intentions, but rather should attach a sufficiently definite meaning to the contract language if possible.'" (quoted source omitted)).

¶19 Here, the circuit court found that undisputed evidence established that the parties intended that Mikus pay Chou back for the amounts shown in the email chain. The court specifically found that the evidence was "unequivocal and clear" in establishing that Mikus owed Chou the amount stated as of January 2024.

Implied in this finding is the determination that Mikus, through the email chain and other email evidence submitted by Chou, demonstrated an intent to pay Chou before she commenced this action. Because Mikus does not meaningfully address the court's findings or the evidence at trial, he does not show that the court clearly erred.[2]

**Calculation of Amount Owed**

¶20 Mikus contends that the circuit court erred by relying on the email chain as accurate without explicitly conducting a line-by-line review of the expenses as reflected in the email chain. Mikus's argument on this point is difficult to track. As best I understand it, he contends that there was insufficient evidence to establish that each item shown in the email thread was accurate as a means of measuring damages based on his failure to pay. I conclude that his argument fails for at least the reason that the record reflects a reasonably certain evidentiary basis for the court to award damages in the amount of $6,448.75.

¶21 Mikus notes that our supreme court explained in *Schubert v. Midwest Broad. Co.*, 1 Wis. 2d 497, 502-03, 85 N.W.2d 449 (1957), that proving damages for a breach of contract claim requires "reasonable certainty" regarding the amount of damages. *See also Christensen v. Sullivan*, 2009 WI 87, ¶87, 320 Wis. 2d 76, 768 N.W.2d 798 (noting that burden of proving contract damages lies with the plaintiff "'to prove by credible evidence to a reasonable certainty that damages were suffered and to establish at least to a reasonable probability the

---

[2] Because I reject Mikus's arguments that the circuit court erred in determining that the parties had formed a valid and enforceable contract, I need not address Chou's apparent argument in the alternative that the judgment of the court should be affirmed based on an equitable doctrine such as quantum meruit.

amount of these damages'" (quoted source omitted)). Mikus contends that the lack of evidence for any of the individual expenses reflected in the parties' email chain creates an unreasonable level of uncertainty regarding the amount of damages, which left the circuit court with no basis to order damages in any amount. However, as further explained in *Schubert*, "[c]ompliance with the rule of reasonable certainty" does not require strict "mathematical accuracy." *Schubert*, 1 Wis. 2d at 503.

¶22 Here, the circuit court credited evidence from the parties' email thread, corroborated by Chou's testimony, which reasonably supports a finding that Mikus agreed to the amounts attributed to him as sums borrowed from Chou and that he agreed with the running tally of those amounts to reach a total owed. As noted above, Mikus does not develop a supported argument that the court clearly erred regarding any of its findings. Nor does he provide a legally supported argument tending to show that these findings did not provide the required reasonable certainty.

¶23 On a more specific point, Mikus asserts that some of the dollar amounts included in the email chain were not properly converted from pesos (the currency used for some transactions) to dollars (the currency used for the running tally and the judgment). But the email thread shows that Mikus calculated many of the currency conversions himself and also that he agreed to the accuracy of the running tally. Beyond that, he does not show through references to the record that any particular entry in the running tally was inaccurate.

**Counterclaim**

¶24 Mikus argues that the circuit court erred in rejecting his counterclaim of $5,000, which he based on a theory of quantum meruit. *See W.H.*

9

*Fuller Co. v. Seater*, 226 Wis. 2d 381, 386, 595 N.W.2d 96 (Ct. App. 1999) ("'recovery in quantum meruit is based upon an implied contract to pay reasonable compensation for services rendered'" (quoting *Ramsey v. Ellis*, 168 Wis. 2d 779, 785, 484 N.W.2d 331 (1992))). At trial, Mikus argued that Chou is indebted to him for services that he provided to her in preparing a tax return and in supporting her in divorce proceedings in Illinois. The circuit court dismissed the counterclaim, based on a finding that Chou did not understand that she would be required to pay him for these services. I conclude that, given the findings of the court, it properly dismissed the counterclaim because it does not satisfy at least one element for quantum meruit.

¶25　Pertinent here, a quantum meruit claim requires as one element that the claimant prove that the claimant reasonably expected compensation for the services allegedly provided. *See Ramsey*, 168 Wis. 2d at 785. This reasonable expectation of compensation must be evident; for example, the claimant cannot have intended that the services be a gift. *See Estate of Lade v. Ketter*, 82 Wis. 2d 80, 89, 260 N.W.2d 665 (1978). In his brief-in-chief, Mikus fails to articulate a theory of quantum meruit supported by the law or the record here. I reject his argument on this basis. *See State v. Pettit,* 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (arguments that are inadequately briefed or unsupported by legal authority will not be considered). In the interest of completeness, I now explain why the record strongly supports the circuit court's decision.

¶26　In cross examining Chou at trial, Mikus asked if she was aware that Mikus expected to be paid for services that he rendered to her during her divorce, including services related to a tax return. Chou testified, "No, I am not aware at all[.] [T]hat is totally a false statement." She further testified that her divorce lawyer never asked Mikus for assistance in connection with the divorce. Mikus

attempted to question Chou further on this topic, but the circuit court indicated that this line of questioning was failing to build toward or to establish any relevant point, but instead was merely wasting time. Mikus said that he could show that information which he provided to Chou's divorce lawyer was used on her behalf in the divorce proceedings. The court responded that this was not relevant to a dispositive issue, that being whether Chou understood, or could reasonably have understood under the circumstances, that Mikus intended to be paid for his services. On appeal, Mikus does not show that the court's decision to require him to terminate this line of questioning was an erroneous exercise of discretion.

¶27 In sum on the issue of the merits of the counterclaim, the circuit court found that Mikus had no expectation of repayment, and Mikus fails to develop any argument on this issue, including an argument that the court's dispositive finding was clearly erroneous.

## CONCLUSION

¶28 For all of these reasons, the judgment of the circuit court is affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

11