EMPLOYERS MUTUAL CASUALTY COMPANY,
Plaintiff-Appellant,

v.

Joseph KUJAWA, Defendant-Respondent.

Court of Appeals

*No. 2014AP732. Submitted on briefs January 6, 2015.
—Decided February 10, 2015.*

**2015 WI App 26**

(Also reported in 861 N.W.2d 808.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jason P. Gehring* of *Kasdorf, Lewis & Swietlik*, S.C., Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Jay A. Urban* of *Urban & Taylor*, S.C., Milwaukee.

An amicus brief was filed by *Mark L. Thomsen* and *Brett A. Eckstein* of *Cannon & Dunphy, S.C.*, Milwaukee, for Wisconsin Association of Justice.

Before Curley, P.J., Kessler, J., and Thomas Cane, Reserve Judge.

¶ 1. CANE, J.   Employers Mutual Casualty Company appeals a judgment declaring that because its insured Joseph Kujawa was not made whole, Employers had no right of subrogation. Employers argues that the trial court erred in denying it the $767 it paid under the medical payments provision of Kujawa's automobile insurance policy. It claims that the made whole rule does not apply when a tortfeasor's liability is undisputed and the tortfeasor's policy limits are sufficient to cover both the insured's injuries and the subrogation amounts. It also claims that Kujawa breached the insurance contract by settling with the tortfeasor without protecting the subrogation interest. We determine that the made whole rule applies under

215

the facts of this case. Accordingly, because the trial court found at the *Rimes v. State Farm Mutual Automobile Insurance Co.*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982), hearing that the settlement did not make Kujawa whole, and because Kujawa did not breach the insurance contract, we affirm.

## BACKGROUND

¶ 2. In September 2010, Kujawa was injured when a tortfeasor, insured by Travelers/St. Paul Fire and Marine Insurance Company, rear-ended the car he was driving. Kujawa's car was owned by Kujawa Enterprises, Inc. and insured by Employers. The policy had $10,000 medical payment coverage. Employers paid Kujawa $767 under the medical payment provision. Travelers had a $2 million policy limit.

¶ 3. Kujawa's injuries resulted in $3,917 of medical expenses and $2,132.72 in lost wages. He hired Attorney Jay Urban and his law firm to make a personal injury claim on his behalf. No lawsuit was ever filed because Urban negotiated a settlement with Travelers. During settlement talks, Urban asked Employers if it would waive its $767 subrogation interest or reduce it to $500. Employers refused and insisted on payment of the full $767. Urban told Employers that its subrogation interest depended on Kujawa being made whole. Kujawa and Travelers agreed to settle the claim for $10,000. Employers asked Travelers to cut it a direct check for $767. Urban objected and ultimately, Travelers issued two checks, one for $767 made out to Employers, Kujawa, and Urban's law firm, and a second check for the balance due to Kujawa. As a condition of the settlement, Kujawa had to sign a general release with a *Schulte v. Frazin*, 176 Wis. 2d

622, 500 N.W.2d 305 (1993), indemnification provision that required Kujawa to indemnify Travelers against all subrogation claims.

¶ 4. In October 2012, a few days after Urban's wife died unexpectedly, his law firm received the $767 settlement check signed by Employers together with a summons and complaint seeking a declaratory judgment against Kujawa advising that the law firm would file the action unless Employers received "a check in the amount of the full $767.00 made payable to [Employers] by Friday, November 2, 2012." In mid-November, Employers actually filed the declaratory judgment action asking the trial court to order Kujawa pay it the $767. Employers asserted that *Muller v. Society Insurance*, 2008 WI 50, ¶ 4, 309 Wis. 2d 410, 750 N.W.2d 1, required Kujawa to pay the $767 because Kujawa's case, it argued, was factually similar to *Muller* where the court ruled the made whole rule was not implicated.

¶ 5. The trial court disagreed with Employers and held a *Rimes* hearing. Kujawa testified that he, even though Urban told him his case was worth much more than $10,000, chose to settle because he did not want to spend time and money prosecuting a lawsuit. He wanted to get on with his life. The trial court found Kujawa's testimony credible; it also found that it would have taken "somewhere between fifteen and twenty" thousand dollars to make Kujawa whole. Because Kujawa was not made whole, it concluded Employers did not have a right of subrogation to collect its $767. The trial court further ruled that *Muller*'s holding that the "made whole" doctrine does not apply was limited to "property damage claims based on negligence" and should not be extended to personal injury cases because: (1) doing so would discourage settle-

ments; and (2) "property damage claims generally present clear issues with respect to the amount of damages which personal injury litigation does not." Employers appeals.

## DISCUSSION

¶ 6. Over thirty years ago, our supreme court decided that, in a personal injury case, a subrogated insurer will not be reimbursed unless the injured insured has been "made whole." *Rimes*, 106 Wis. 2d at 271–77. The *Rimes* decision was based in equity: " 'Where either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk the insured has paid it to assume.' " *Id.* at 276 (citation and one set of parentheses omitted). Since *Rimes*, we have seen a variety of cases with different factual scenarios addressing this principle. Each of these subrogation cases are decided on equity, which "does not lend itself to the application of black letter rules. It is heavily influenced by particular facts." *See Muller*, 309 Wis. 2d 410, ¶ 26 (internal citation omitted). For example, in *Schulte*, our supreme court recognized that subrogation claims often result in injured insureds and subrogated insurers competing for "limited settlement funds." *Id.*, 176 Wis. 2d at 633. In many cases, the tortfeasor's insurer will require the injured insured to agree to indemnify its insurer. *Id. Schulte* held that in such circumstances, the subrogated insurer has no right of subrogation unless it is determined at a *Rimes* hearing that the injured insured has been made whole:

> We conclude that when an injured insured settles with the tortfeasor and that person's insurer without

218

resolving the subrogated insurer's part of the claim; the settling parties ask the circuit court to determine whether the injured party has been made whole; and the subrogated insurer has an opportunity to participate in the hearing, the subrogated insurer's rights of subrogation depend on whether the settlement made the plaintiff whole. In such a situation, either the insured or its insurer must to some extent go unpaid. If, as in this case, the circuit court determines that the settlement does not make the plaintiff whole, the subrogated insurer has no right of subrogation.

*Schulte*, 176 Wis. 2d at 637.

¶ 7. Employers tries to escape *Schulte* based on the fact that *Kujawa* did not request the *Rimes* hearing. Rather, it had to file this declaratory judgment action to get to the *Rimes* hearing. The evidence shows, however, that Kujawa's attorney's wife died suddenly at the same time the law firm received the signed $767 check that would have allowed it to request the *Rimes* hearing. The trial court found, after hearing how these events unfolded, the equitable thing to do was to hold the *Rimes* hearing.[1] We agree. Employers fully partici-

---

[1] Employers reasons that because Kujawa did not immediately seek a *Rimes* hearing, the holding in *Schulte* does not apply. *See Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 316 N.W.2d 348 (1982); *Schulte v. Frazin*, 176 Wis. 2d 622, 500 N.W.2d 305 (1993). As we have seen from the procedural facts of this case, there was a reason for that. While Kujawa's attorney was waiting for Employers to execute the check, his wife died unexpectedly. The law firm rushed to cover Urban's cases. But for the unexpected death, the trial court was satisfied Urban would have requested a *Rimes* hearing in a declaratory judgment action. As a practical matter, the trial court recognized that it did not make any difference who first filed for the declaratory judgment as the underlying issue would be the same.

219

pated in the hearing and the trial court found that Kujawa was not made whole. The trial court also found that Kujawa settled the claim in good faith and for reasonable reasons. Although our review presents a question of law that we review *de novo, see Schulte,* 176 Wis. 2d at 628, we agree with the trial court that *Schulte* controls.

¶ 8. Employers also contends that this case should be governed by *Muller* instead of *Schulte.* In *Muller,* our supreme court held that the made whole doctrine did not apply and the equities favored the insurer. *Id.,* 309 Wis. 2d 410, ¶ 4. The Mullers' business burned down due to negligent installation of the electrical wiring resulting in $697,981.58 in damages. *Id.,* ¶ 5. The Mullers had property insurance with Society Insurance and it paid the Mullers their policy limit of about $400,000, leaving the Mullers with about a $300,000 loss. *Id.,* ¶ 6. The Mullers then sued the electrician and his insurer, United Fire and Casualty, with whom the insurer had a $1 million policy. *Id.,* ¶¶ 5, 7. Society cross-claimed in the suit for subrogation. *Id.,* ¶ 7. During initial mediation, Society and United reached a tentative settlement agreement of $190,000 conditioned upon the Mullers settling or resolving the case at trial. *Id.,* ¶ 8. Eventually, the Mullers settled with United for $120,000. *Id.,* ¶ 11. The settlement did not include an agreement to indemnify the electrician or United. *Id.,* ¶ 12. The issue arose as to whether the Mullers could force Society to pay them $170,000 of the $190,000 settlement to "make them whole." *Id.,* ¶ 14. Our supreme court held that the made whole doctrine was *not implicated* because: (1) the insurer fully satisfied its obligations to its insured and allowed the insured to settle their claim with the tortfeasor's

insurance company; (2) the pool of settlement funds available exceeded the total claims of both the insured and the subrogated insurer; and (3) the insured settled their claim, agreeing to take less than what it lost. *Id.*, ¶ 87.

¶ 9. *Muller* does not apply to the facts in this case. Unlike *Muller*, Kujawa's settlement *required* an indemnification agreement. "[T]he existence of an indemnification agreement . . . indirectly creates a limited pool of settlement funds." *Id.*, ¶ 60. So even though Travelers had a $2 million policy, which could have easily covered Kujawa's $15,000–$20,000 claim *plus* the $767 subrogation interest, the *settlement* reduced the available pool to $10,000. As a result, Kujawa and Employers were competing for a limited amount of money. Under these circumstances, the made whole doctrine applies. *Id.*, ¶ 60. The *absence* of these two factors (indemnification agreement and limited pool of funds) resulted in the *Muller* holding.

¶ 10. There is no basis for us to extend *Muller* to Kujawa's case specifically or to personal injury cases in general. We agree with the trial court's point that *Muller* should not be extended to personal injury cases because even when liability is admitted, it is not unusual for personal injury cases to involve a damages dispute. So, unlike in *Muller*, where the property damage loss was undisputed to the penny, this case involved great debate over the proper amount of damages to be paid. Even the trial court described the damage value in a range ($15,000–$20,000) rather than a sum certain.

221

¶ 11. Employers argues that such reasoning will allow insureds to settle for less than what makes them whole to *intentionally* extinguish subrogation rights. There is no evidence that this happened in the case before us. Kujawa settled the claim because litigation was interfering with his business and he wanted to move on with his life. The trial court found Kujawa credible and that he acted in good faith. If we were to accept Employers' position, we would be opening the door to subrogation interests controlling whether an injured party settles or goes to trial and that is a slippery slope we do not want to go down. The injured insured should not be forced to go to trial so that its insurer, who accepted premiums to accept the risk of loss, can recover all the amounts it paid under the policy. Wisconsin public policy favors settlements because they encourage "the efficient resolution of disputes." *See Manitowoc Western Co., Inc. v. Montonen*, 2002 WI 21, ¶ 23, 250 Wis. 2d 452, 639 N.W.2d 726. As *Schulte* held: "[W]e believe the injured party should have the right to settle on its own terms. Wisconsin has a 'long-standing policy in favor of settlements.'" *Id.*, 176 Wis. 2d at 634 (citation omitted).[2]

---

[2] Employers also cites two other cases, *Paulson v. Allstate Insurance Co.*, 2003 WI 99, 263 Wis. 2d 520, 665 N.W.2d 744, and *Fischer v. Steffen*, 2011 WI 34, 333 Wis. 2d 503, 797 N.W.2d 501, to support its claim that the made whole doctrine should not apply here. We reject this argument. Both *Paulson* and *Fischer* involved factual scenarios very different from Kujawa's. *Paulson* involved a dispute over a property damage repair bill where Paulson's own insurer paid Paulson the entire amount of the repair and then sought subrogation from the tortfeasor's insurer. *Id.*, 263 Wis. 2d 520, ¶¶ 2–3. *Fischer* involved the interplay of an arbitration ruling that the tortfeasor was not negligent and the jury finding that the tortfeasor

¶ 12. Further, Employers argues that Kujawa breached the contract by settling his claim without protecting its subrogation interest. It relies on the subrogation provision in its policy that required Kujawa to "do everything necessary to secure our rights and [that he] must do nothing after 'accident' or 'loss' to impair [Employers' subrogation rights]." The trial court found that Kujawa did not breach the contract and we agree. There is no evidence that Kujawa settled for $10,000 to prevent Employers from recouping its $767. Kujawa acted in good faith and had reasonable reasons for compromising the claim. As the trial court explained: "[Kujawa] testified in an overwhelmingly credible manner that" he has "other priorities. I've got a wife. I've got a family. I've got work. I don't want to be involved with lawyers and insurance adjustors and court reporters and judges. I want no part of that. . . . Just get me what you can even though it's not fair and I'm out." Thus the evidence amply supports the conclusion that Kujawa did not breach the automobile insurance policy when he decided to settle his personal injury claim.

¶ 13. Finally, Employers' insurance policy specifically provided that it would not seek subrogation until Kujawa was "fully compensated" for all damages: "We shall be entitled to a recovery only after the 'insured' has been fully compensated for damages."

---

was negligent. *Id.*, 333 Wis. 2d 503, ¶¶ 2–5. As noted, we decide subrogation cases on equity, which "does not lend itself to the application of black letter rules. It is heavily influenced by particular facts." *See Muller v. Society Ins.*, 2008 WI 50, ¶ 26, 309 Wis. 2d 410, 750 N.W.2d 1. The particular facts in Kujawa's case are closest to those in *Schulte*, 176 Wis. 2d 622. The made whole doctrine applies.

Employers is not only trying to recover its $767 even though Kujawa has not been fully compensated, it *sued* its own insured in order to do so. The contract bars Employers from recouping the $767 because Kujawa has not been "fully compensated."

*By the Court.*—Order affirmed.