# COURT OF APPEALS
## DECISION
## DATED AND FILED

### June 17, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2023AP1638**
**2024AP214**

Cir. Ct. No. 2022CV595

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

NO. **2023AP1638**

KATHIE ISELIN,

PLAINTIFF-APPELLANT,

V.

TRYGGVI M. MAGNUSSON AND OXANA K. MAGNUSSON,

DEFENDANTS-RESPONDENTS,

AMAXIMMO LLC D/B/A AMAXIMMO REAL ESTATE, GIZO UJARMELI, JESSICA SCOTT, ABC INSURANCE COMPANY, CORNERSTONE HOME INSPECTIONS OF WIS. LLC, RICHARD C. ALSTAD, REPUBLICAN VANGUARD INSURANCE COMPANY AND TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,

DEFENDANTS.

---

No. 2024AP214

KATHIE ISELIN,

    PLAINTIFF-APPELLANT,

  V.

TRYGGVI M. MAGNUSSON AND OXANA K. MAGNUSSON,

    DEFENDANTS-RESPONDENTS,

AMAXIMMO LLC D/B/A AMAXIMMO REAL ESTATE AND
GIZO UJARMELI,

    DEFENDANTS,

  V.

JESSICA SCOTT AND TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

    DEFENDANTS.

---

APPEALS from orders of the circuit court for Marathon County: RICK T. CVEYKUS, Judge. *Order reversed and cause remanded with directions; appeal of order denying reconsideration dismissed.*

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kathie Iselin appeals a circuit court order granting a motion to enforce a settlement agreement and dismissing Iselin's claims against Tryggvi and Oxana Magnusson.[1] Iselin argues that the circuit court erred in three ways: (1) by concluding that the parties had reached an enforceable settlement agreement; (2) by resolving the parties' dispute over the terms of that agreement rather than sending this dispute to arbitration; and (3) by ordering Iselin to execute documents that were inconsistent with the parties' agreement.

¶2 We conclude that the second issue is dispositive. Specifically, the circuit court should have sent the parties' dispute over the terms of their agreement to arbitration, without addressing the merits of that dispute. We therefore reverse the court's order and remand with instructions that the parties' mediator arbitrate all issues de novo.

¶3 Separately, Iselin appeals from a subsequent order denying her motion for reconsideration (Appeal No. 2024AP214). We sua sponte consolidated Iselin's two appeals for the purpose of disposition. Because we are reversing the circuit court's order in Appeal No. 2023AP1638, Iselin's appeal of the order denying reconsideration is moot, and we will not discuss it further. We dismiss Appeal No. 2024AP214 as moot.

## BACKGROUND

¶4 Iselin purchased a residential property from the Magnussons in 2020. On October 4, 2022, Iselin filed this civil action against the Magnussons,

---

[1] For ease of reading, we refer to Tryggvi and Oxana collectively as "the Magnussons." When referring to either defendant-respondent individually, we use their first names to avoid confusion.

their realtors, and other defendants,[2] alleging various undisclosed problems with the home. On April 28, 2023, Iselin filed an amended complaint adding a defendant and incorporating new allegations against the existing defendants. Iselin's amended complaint sought relief from the Magnussons and their realtors on a variety of theories, including breach of contract and warranty; common law misrepresentation; fraudulent misrepresentation, in violation of WIS. STAT. § 895.446 (2023-24);[3] and false advertising, in violation of WIS. STAT. § 100.18. The amended complaint also set forth various negligence theories against the remaining defendants.

¶5      On March 16, 2023, the circuit court ordered the parties to engage in alternative dispute resolution. The parties engaged Attorney Michael Cohen as a mediator. The parties were unable to reach a global settlement to resolve Iselin's claims against all defendants, but Iselin and the Magnussons continued to negotiate. These continued negotiations yielded a term sheet through which Iselin and the Magnussons expressed their intent "to fully and finally resolve their Dispute and any claims alleged or that could have been alleged against each other …, while preserving Iselin's claims against other defendants."

¶6      Among other provisions, the term sheet required Tryggvi[4] to make a settlement payment to Iselin, which would "be held in trust pending execution of a

---

[2] The other defendants include various real estate professionals, a home inspector, and liability insurers. The Magnussons' realtors and these other defendants are not parties to these appeals.

[3] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[4] Tryggvi and Oxana were represented separately, but the settlement proposed by Tryggvi called for the release of all claims against both of the Magnussons. Tryggvi is the only defendant-respondent who filed a brief in these appeals.

mutually acceptable Confidential Settlement Agreement and Release, including a *Pierringer* Release."[5]  The term sheet specified several "terms and conditions" to be included in the settlement agreement and release.  The term sheet also stated that "[t]he Parties agree that if any disputes arise in relation to the Term Sheet they submit them to the Mediator, in good faith, to resolve such disputes by binding decision."

¶7      The parties subsequently exchanged proposed drafts of the settlement agreement and release called for by the term sheet but were unable to agree upon the form and content of their Confidential Settlement and Release.  A key point of disagreement was the scope of the *Pierringer* release.  Iselin objected to the breadth of the Magnussons' proposed release because, among other things, the release purported to settle all causes of action "attributable to the causal negligence or liability of [the Magnussons]."  Iselin rejected that language, arguing that she did not intend such a broad release.

¶8      On May 17, 2023, Tryggvi filed a motion to enforce the mediated settlement, asking the circuit court to compel Iselin to sign his versions of the settlement agreement and release.  On the following day, Iselin sent Cohen a letter invoking the clause in the term sheet that required the parties to submit any disputes in relation to the term sheet to Cohen for mediation.  By letter dated June 15, 2023, Cohen explained that under Wisconsin law, the question of whether

---

[5] A *Pierringer* release may affect a nonsettling tortfeasor's right to contribution from the settling tortfeasor. *See generally Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963). The parties dispute the intended effect of their *Pierringer* release, but for reasons discussed below, we do not address this dispute.

he had "the power to resolve the present dispute between the parties" was "for the court in the underlying action to decide."

¶9    Iselin opposed Tryggvi's motion on June 16, 2023, making four arguments for why the circuit court should deny Tryggvi's motion.  First, Iselin argued that "there was no enforceable agreement between the parties as to the language and scope of" their settlement agreement.  Second, and relatedly, Iselin argued that "there was no 'meeting of the minds' as to what language [the] *Pierringer* release would include."  Third, Iselin argued that "the dispute between the parties is within the responsibility of the mediator, and therefore Mediator Cohen should resolve the dispute."  Fourth, in the event that the court chose to decide the parties' dispute, Iselin contended that the court should require the Magnussons to sign her proposed settlement and release documents because Iselin's version accurately reflected the objective intent of the parties.

¶10    At a hearing on July 10, 2023, the circuit court rejected each of Iselin's arguments and granted Tryggvi's motion.  Specifically, the court determined that the parties had reached an enforceable settlement agreement notwithstanding ambiguity regarding the scope of the *Pierringer* release.  The court further concluded, without explanation, that it was unnecessary to send the dispute back to Cohen over the scope of that release; instead, the court resolved the ambiguity in Tryggvi's favor by relying upon extraneous evidence regarding the parties' intent.  Accordingly, the court ordered Iselin to sign Tryggvi's proposed settlement agreement and release.  The court entered its written order on July 26, 2023, and Iselin now appeals.

6

**DISCUSSION**

¶11 Iselin makes three arguments on appeal. First, Iselin contends that the circuit court erred by determining that the parties' mediated agreement was enforceable. Second, Iselin makes the alternative argument that if the mediated agreement is enforceable, then the court erred by not enforcing the arbitration clause requiring the parties to submit their dispute to Cohen for a binding decision. Third, Iselin contends that the court erred by determining that Tryggvi's proposed settlement and release accurately reflected the mediated agreement.

¶12 We address Iselin's second argument first because, if the term sheet requires the parties to submit their dispute to Cohen, then "[t]he courts have no business weighing the merits of the" dispute. *See Cirilli v. Country Ins. & Fin. Servs.*, 2009 WI App 167, ¶13, 322 Wis. 2d 238, 776 N.W.2d 272 (citation omitted); *Joint Sch. Dist. No. 10 v. Jefferson Educ. Ass'n*, 78 Wis. 2d 94, 111, 253 N.W.2d 536 (1977). Instead, assuming the parties did agree to arbitrate their dispute, "the 'agreement is to submit all [disputes] to arbitration, not merely those which the court will deem meritorious.'" *See Cirilli*, 322 Wis. 2d 238, ¶13 (citation omitted).

¶13 "[W]hether the parties agreed to submit an issue to arbitration … is a question of law for the courts to decide." *Kimberly Area Sch. Dist. v. Zdanovec*, 222 Wis. 2d 27, 38, 586 N.W.2d 41 (Ct. App. 1998). "There is a strong presumption of arbitrability where the contract in question contains an arbitration clause." *Cirilli*, 322 Wis. 2d 238, ¶14 (citations omitted). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.*

¶14    We see no serious dispute over whether the parties' term sheet includes an arbitration clause.  Specifically, the term sheet states that "[t]he Parties agree that if any disputes arise in relation to the [t]erm [s]heet they submit them to the Mediator, in good faith, to resolve such disputes by binding decision."  The circuit court recognized that this language was an arbitration clause, and we see no developed argument from Tryggvi that the court erred in this regard.[6]

¶15    Having determined that the term sheet includes an arbitration clause, we now turn to the question of whether the arbitration clause covers the dispute at issue in this case.  In considering whether a particular dispute should be arbitrated, our "function is limited to a determination of whether: (1) there is a construction of the arbitration clause that would cover the [dispute] on its face and (2) whether any other provision of the contract specifically excludes it."  *Cirilli*, 322 Wis. 2d 238, ¶14 (citing *Joint Sch. Dist. No. 10*, 78 Wis. 2d at 111; *Kimberly*, 222 Wis. 2d at 38).  "[A]n order to arbitrate the particular [dispute] should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Id.* (citation omitted).

¶16    Applying the first step from *Cirilli*, we consider whether the arbitration clause covers the dispute on its face.  The arbitration clause requires that "if any disputes arise in relation to the [t]erm [s]heet [the parties] submit them

---

[6] Tryggvi refers to this language as an "arbitration clause" throughout his brief.  The use of scare quotes is not a substitute for a developed argument.  *See Scare Quotes*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/scare%20quotes (last visited June 10, 2025) ("[Q]uotation marks used to express especially skepticism or derision concerning the use of the enclosed word or phrase.").  We therefore deem Tryggvi to have conceded that the term sheet contained an arbitration clause.  *See Shadley v. Lloyds of London*, 2009 WI App 165, ¶26, 322 Wis. 2d 189, 776 N.W.2d 838 ("Arguments not rebutted on appeal are deemed conceded.").

to" Cohen. Here, the parties' dispute centers on the intended scope of the *Pierringer* release. We can easily conclude that this dispute arises in relation to the provision of the term sheet that calls for the execution of a "mutually acceptable Confidential Settlement Agreement and Release, including a *Pierringer* Release." Thus, on its face, the arbitration clause covers the parties' dispute.

¶17 Applying the second step from *Cirilli*, the parties' dispute should be arbitrated unless there is some other provision of the term sheet that specifically excludes this issue from arbitration. Tryggvi does not identify any other provision of the contract that specifically excludes arbitration over the intended scope of the *Pierringer* release. Instead, Tryggvi contends that "there is no real dispute" because "the meaning of '*Pierringer* release' has been fixed by the case law for over thirty-five years." Tryggvi's argument goes beyond the limited analysis that *Cirilli* permits us to do. We need not determine whether Iselin has created a "real dispute" over the scope of the *Pierringer* release because "even a seemingly frivolous claim must be submitted to arbitration." *See Cirilli*, 322 Wis. 2d 238, ¶17.

¶18 Tryggvi also argues that the only dispute before the circuit court was Iselin's refusal to perform the parties' agreement by not signing the documents proposed by Tryggvi. He contends that the circuit court did not err by resolving this dispute because "[t]here is nothing in the [term sheet] that suggests the circuit court was divested of jurisdiction to enforce the performance of an unambiguous contract." This argument turns the *Cirilli* analysis on its head. Under the two-step process in *Cirilli*, our determination that the arbitration clause covers the parties' dispute means that the dispute must be arbitrated unless the parties have specifically excluded that dispute from arbitration. *See id.*, ¶14. Tryggvi has not

identified any language in the term sheet that excludes from arbitration Iselin's refusal to execute the documents drafted by Tryggvi.

¶19    Tryggvi makes three additional arguments for why the circuit court did not err by resolving the parties' dispute on the merits rather than enforcing the arbitration clause in the term sheet.  First, he contends that Iselin's argument that the parties have a binding arbitration clause is "illogical" in light of her initial argument that the parties do not have an enforceable agreement at all.  Specifically, in the circuit court and on appeal, Iselin's first argument was that the term sheet was merely an "agreement[] to agree at a future time" and, therefore, was not enforceable.  Alternatively, Iselin argued that if the term sheet did give rise to an enforceable agreement, that agreement also required the parties to arbitrate the disputes that arise in relation to that agreement.

¶20    We see nothing illogical about making arguments in the alternative, especially in light of Wisconsin's "long-standing policy in favor of settlements." *See Employers Mut. Cas. Co. v. Kujawa*, 2015 WI App 26, ¶11, 361 Wis. 2d 213, 861 N.W.2d 808 (citation omitted).  Here, Iselin has failed to make a serious argument that the term sheet is not enforceable.  In order to be enforceable, an agreement "must be definite as to the parties' basic commitments and obligations." *Ehlinger v. Hauser*, 2010 WI 54, ¶57, 325 Wis. 2d 287, 785 N.W.2d 328 (citation omitted).  In contrast, "[v]agueness or indefiniteness as to an essential term of the agreement prevents the creation of an enforceable contract."  *Management Comput. Servs. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 178, 557 N.W.2d 67 (1996).

¶21    Iselin argues that the term sheet's reference to "a *Pierringer* release" is indefinite, but she relies on authority that expressly describes this phrase as

"ambiguous." *See Wosinski v. Advance Cast Stone Co.*, 2017 WI App 51, ¶¶157-58, 377 Wis. 2d 596, 901 N.W.2d 797 (agreeing with the circuit court's determination that a settlement "offer was ambiguous because it was based on the execution of a *Pierringer* release that had yet to be drafted"). The problem for Iselin is that, unlike indefiniteness, "ambiguity in itself does not render a contract unenforceable." *See Ehlinger v. Hauser*, 2008 WI App 123, ¶28, 313 Wis. 2d 718, 758 N.W.2d 476, *aff'd as modified and remanded*, 2010 WI 54, 325 Wis. 2d 287, 785 N.W.2d 328. As our supreme court has explained, "parties do not need to agree subjectively to the same interpretation at the time of contracting in order for there to be a mutual assent, because a literal 'meeting of the minds' is not required." *Management Comput. Servs.*, 206 Wis. 2d at 180-81 (citation omitted). On the contrary, "if a disagreement between parties as to their intent could support a claim of indefiniteness, … nearly every contract challenged in court would be void for indefiniteness." *Id.* at 181. Because Iselin only argues that the reference to "a *Pierringer* release" is ambiguous,[7] she has failed to establish that the term sheet is not enforceable.

¶22 Iselin also relies on *Paul R. Ponfil Trust v. Charmoli Holdings, LLC*, 2019 WI App 56, 389 Wis. 2d 88, 935 N.W.2d 308, in which the parties to a mediation executed a handwritten, one-page document requiring "the parties to sign a separate substantive agreement covering such things as liability and

---

[7] Tryggvi argues that there is no ambiguity because "the phrase '*Pierringer* release' is a legal term of art for which courts have defined, objective parameters." *See Allsop Venture Partners III v. Murphy Desmond SC*, 2023 WI 43, ¶¶41-49, 407 Wis. 2d 387, 991 N.W.2d 320. Because we have already determined that the meaning of this phrase is a question for the arbitrator, we cannot address the merits of the parties' arguments regarding the phrase's meaning. *See Cirilli v. Country Ins. & Fin. Servs.*, 2009 WI App 167, ¶13, 322 Wis. 2d 238, 776 N.W.2d 272. Our discussion is limited to determining whether Iselin has demonstrated that the phrase is too indefinite to give rise to an enforceable contract, and we conclude that she has not.

indemnity in usual form." *Id.*, ¶¶2-3. We concluded that this document was not an enforceable settlement agreement because the phrase "in usual form" was "not sufficiently definite." *Id.*, ¶¶1, 24-25. In particular, there was "[n]o showing … that there is a 'usual form' when it comes to the terms" of a settlement agreement. *Id.*, ¶24. In turn, this indefiniteness meant that "a reviewing court would have no guidance as to how to enforce" the material terms of the agreement. *Id.*, ¶¶24-25.

¶23 *Ponfil* is readily distinguishable for two reasons. First, the term sheet at issue in this case is 3 pages, typewritten, and contains 26 different provisions. As such, the term sheet contains much more detail regarding the terms on which Iselin and the Magnussons intended to settle their claims, as compared to the one-page, handwritten document at issue in *Ponfil*. Second, in contrast to the undefined phrase "in usual form" that was deemed too indefinite in *Ponfil*, both parties have cited several published Wisconsin decisions that provide guidance regarding the meaning of the phrase "a *Pierringer* release."[8] Thus, *Ponfil* does not help Iselin establish that the term sheet is too indefinite to be enforceable.

¶24 Tryggvi's second argument is that Iselin has forfeited her argument that the circuit court was required to enforce the arbitration clause in the term sheet. "'[F]orfeiture' is the failure to make the timely assertion of a right." *Townsend v. Massey*, 2011 WI App 160, ¶19 n.3, 338 Wis. 2d 114, 808 N.W.2d

---

[8] Once again, we make no comment on the merits of the parties' arguments regarding the meaning of this phrase because that question is solely for the arbitrator. *See Cirilli*, 322 Wis. 2d 238, ¶13 ("In deciding whether the parties have agreed to submit a dispute to arbitration, the court is not to rule on the potential merits of the underlying claim.").

155 (citation omitted). We disagree with Tryggvi's contention that Iselin forfeited her argument regarding arbitration.

¶25 To avoid forfeiture, "a party must raise an issue with sufficient prominence such that the [circuit] court understands that it is called upon to make a ruling." *State v. Eugene W.*, 2002 WI App 54, ¶13, 251 Wis. 2d 259, 641 N.W.2d 467.[9] We agree with Iselin that she raised the issue with sufficient prominence in the circuit court. Specifically, in her opposition to the motion to enforce the settlement agreement, Iselin argued that "the dispute between the parties is within the responsibility of the mediator, and therefore Mediator Cohen should resolve the dispute." During the July 10, 2023 hearing, the court identified the arbitration question as a threshold issue for its decision, asking the parties, "[A]m I the one that should be making this decision today or should that go back to an arbitrator of some kind to find out what the word 'Pierringer' means?" The court further indicated that it agreed with Iselin that the dispute was arbitrable, noting that it "underst[ood] the language of the agreement is it should go back to the arbitrator." We therefore conclude that Iselin raised the arbitration issue with sufficient prominence to alert the court that it needed to make a ruling on this issue.

¶26 Tryggvi nonetheless contends that WIS. STAT. § 788.02 required Iselin to submit an "application" to the circuit court in order to invoke the right to

---

[9] The quoted sentence in *State v. Eugene W.*, 2002 WI App 54, ¶13, 251 Wis. 2d 259, 641 N.W.2d 467, refers to "waiver," but waiver and forfeiture are frequently confused in our decisional law. *See State v. Ndina*, 2009 WI 21, ¶28, 315 Wis. 2d 653, 761 N.W.2d 612 ("The case law is rife with confusion about the words 'waiver' and 'forfeiture.'"). Here, Tryggvi correctly cites *Eugene W.* to support a forfeiture argument.

arbitration.[10] This statute does not define "application," but Tryggvi nonetheless argues that the statute required Iselin to file a motion to compel arbitration, citing *L.G. v. Aurora Residential Alternatives, Inc.*, 2019 WI 79, 387 Wis. 2d 724, 929 N.W.2d 590, and *J.J. Andrews, Inc. v. Midland*, 164 Wis. 2d 215, 474 N.W.2d 756 (Ct. App. 1991).

¶27 Neither decision supports Tryggvi's argument that WIS. STAT. § 788.02 imposes a mandatory form on a party's invocation of an arbitration clause. The issue in *L.G.* was "whether a circuit court order denying a request to compel arbitration and stay a pending lawsuit is final for the purposes of appeal." *L.G.*, 387 Wis. 2d 724, ¶1. Our supreme court explained that the answer to this question depended on whether the order "was final within the meaning of WIS. STAT. § 808.03(1)." *Id.*, ¶8. In analyzing this question, the court drew heavily on several prior decisions regarding final orders, including *State v. Scott*, 2018 WI 74, 382 Wis. 2d 476, 914 N.W.2d 141. *See L.G.*, 387 Wis. 2d 724, ¶¶18-22. In *Scott*, the court had previously concluded that an order regarding a defendant's competence to stand trial was a final order within the meaning of § 808.03(1) because

---

[10] WISCONSIN STAT. § 788.02 provides that

> [i]f any suit or proceeding be brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

14

> [t]he competency proceeding resolves an issue separate and distinct from the issues presented in the defendant's underlying criminal proceeding. Thus, while the criminal proceeding and the competency proceeding are "related" or "connected" to one another, the competency proceeding is properly "treated as being commenced independently of any other action or proceeding."

*Scott*, 382 Wis. 2d 476, ¶¶33-34 (citation omitted).

¶28 Analogizing to *Scott*, our supreme court concluded that the motion to compel arbitration in *L.G.* was also a final order under WIS. STAT. § 808.03(1). *L.G.*, 387 Wis. 2d 724, ¶22. Specifically, the court explained that when a circuit court addresses an application under WIS. STAT. § 788.02, "it 'resolves an issue separate and distinct from the issues presented in' the pending lawsuit, but which is 'related' or 'connected' to that lawsuit." *L.G.*, 387 Wis. 2d 724, ¶22 (citing *Scott*, 382 Wis. 2d 476, ¶33).

¶29 In articulating this conclusion, our supreme court stated that "an 'application to stay' under the auspices of WIS. STAT. § 788.02 is a special proceeding within the meaning of WIS. STAT. § 808.03(1)." *L.G.*, 387 Wis. 2d 724, ¶22. Tryggvi argues that this sentence supports the proposition that "a motion to compel arbitration is not a mere formality" but rather "is necessary to initiate a 'special proceeding.'" But Tryggvi has not directed our attention to anything in *L.G.* that requires a formal application or motion in order to initiate a special proceeding under § 808.03(1). On the contrary, the court also explained that "just because something *can* be commenced in a particular fashion does not mean it *must* be so commenced." *L.G.*, 387 Wis. 2d 724, ¶21. Thus, *L.G.* does not support Tryggvi's argument that a formal motion under § 788.02 is necessary for a party to invoke the right to arbitration.

¶30 Tryggvi's reliance on *J.J. Andrews, Inc.* falls short for similar reasons. Tryggvi points to our statement that "[WIS. STAT. §] 788.02 allows one of the parties to move to stay a pending trial to permit arbitration." *See J.J. Andrews, Inc.*, 164 Wis. 2d at 224. Once again, Tryggvi reads too much into isolated language. This sentence was part of our explanation of the differences between § 788.02—which applies when a party seeks arbitration in an already pending case—and WIS. STAT. § 788.03—which "allows a party aggrieved by an alleged failure, neglect or refusal of another to perform arbitration to petition any court for an order to arbitrate." *J.J. Andrews, Inc.*, 164 Wis. 2d at 224-25. We explained that this distinction was significant because § 788.03 requires a hearing on the validity of the contract whereas § 788.02 "only requires that the [circuit] court determine if the issue involved in the suit is referable to arbitration." *J.J. Andrews, Inc.*, 164 Wis. 2d at 225.

¶31 We see nothing in *J.J. Andrews, Inc.* to suggest that Iselin was required to follow a specific form when asking the circuit court to enforce the arbitration clause in the term sheet. Moreover, requiring a formal invocation seems superfluous insofar as the court did what WIS. STAT. § 788.02 requires—namely, it determined that the parties' dispute was referable to arbitration. Specifically, the court stated, "I also understand the language of the agreement is it should go back to the arbitrator." The legal error only arose when, after determining that the dispute was referable to arbitration, the court nonetheless agreed with the Magnussons that it could decide the referable dispute on its own.

¶32 For these reasons, we reject Tryggvi's argument that Iselin forfeited her argument regarding arbitration.

16

¶33    Tryggvi's third and final argument for why the parties should not be required to arbitrate their dispute is that Iselin waived the right to enforce the arbitration clause by her conduct. *See Meyer v. Classified Ins. Corp. of Wis.*, 179 Wis. 2d 386, 396, 507 N.W.2d 149 (Ct. App. 1993). In *Meyer*, the plaintiffs sought damages from another motorist following a motor vehicle accident. *Id.* at 390. The plaintiffs also joined their own insurer based on the underinsured motorist endorsement in their policy. *Id.* After the plaintiffs settled their claim with the other motorist shortly before trial, the insurer sent a letter to the circuit court arguing, for the first time, that the insurance policy required the parties to arbitrate. *Id.* at 391. When the plaintiffs objected to the insurer's request as untimely, the insurer filed a motion to stay proceedings pursuant to WIS. STAT. § 788.02 (1991-92). *Meyer*, 179 Wis. 2d at 391.

¶34    The circuit court denied the insurer's motion on the ground that the insurer had waived its right to arbitration by failing to file its motion until one week before trial, in violation of the court's scheduling order. *Id.* at 397-98. The court further determined that the delay prejudiced the plaintiffs. *Id.* at 398. We affirmed, explaining that "referral to arbitration can be requested until the start of the trial but need not be granted if waived by the earlier conduct of the applicant." *Id.* at 395. In view of the facts, we agreed with the circuit court that the insurer had "waived arbitration based upon its overall conduct during the pendency of the lawsuit." *Id.* at 398.

¶35    We can easily distinguish the eleventh-hour request for arbitration in *Meyer* from the facts of the present case. In the present case, Iselin sent a letter to Cohen invoking the arbitration clause the day after Tryggvi filed the motion to enforce the settlement agreement. After Cohen responded that the circuit court would need to determine arbitrability, Iselin asked the court to make a

17

determination regarding arbitration on the following day. In short, the facts in this case show that Iselin invoked the right to arbitration at the earliest possible stage in the proceedings, and there is no suggestion that there was any delay whatsoever, much less a delay that prejudiced the Magnussons. We therefore conclude that Iselin has not waived her right to arbitrate.

## CONCLUSION

¶36 For the foregoing reasons, we conclude that Iselin properly invoked the right to arbitration in accordance with the term sheet. We further conclude that the arbitration clause required the circuit court to refer the parties' dispute to the arbitrator. Because the court erred by reaching the merits of the parties' dispute, we reverse with instructions to vacate its order and instead refer the parties' dispute to Cohen for binding decision.

*By the Court.*—Order reversed and cause remanded with directions; appeal of order denying reconsideration dismissed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

18